# Exhibit "E"

REPORTER'S RECORD

**VOLUME 1 OF 2 VOLUMES**

TRIAL COURT CAUSE NO. 1242113


| | |
|---|---|
| GERARD RICHARD WILLIAMS, III, | ) IN THE COUNTY CIVIL COURT |
|      Plaintiff, | ) |
| | ) |
| VS. | ) |
| | ) AT LAW NUMBER ONE (1) |
| | ) |
| DAI DUONG PHAM (A/K/A DEREK PHAM), THU THUONG DOAN, TU NGUYEN, (A/K/A THANH TU NGUYEN) and NHU TA, | ) ) ) ) |
|      Defendants. | ) HARRIS COUNTY, TEXAS |



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MOTIONS HEARING**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


On the 20th day of February, 2025, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Audrie Lawton-Evans, Judge presiding, held in Houston, Harris County, Texas;

Proceedings reported by computer-aided transcription/stenograph shorthand.

1              **GERARD RICHARD WILLIAMS, III,**

2    having been first duly sworn, testified as follows:

3                    **DIRECT EXAMINATION**

4    **BY MR. DOYLE:**

5         Q.    Good afternoon, Mr. Williams.  Can you please

6    introduce yourself to the Court?

7         A.    Yes.  I am Gerard Richard Williams, III.

8         Q.    Are you presently employed, sir?

9         A.    I am, yes.

10        Q.    How?

11        A.    I'm a senior vice president at Qualcomm in

12    San Diego.  I serve as a senior VP of engineering, over

13    about 1,000 engineers.

14        Q.    Do you have family, sir?

15        A.    I do, yes.

16        Q.    Can you tell us a little bit about them?

17        A.    My wife is actually in the courtroom.  She is

18    sitting in the back in the blue outfit.  We've been

19    married for about 14 -- almost 15 years now.  I have

20    seven kids as well.

21        Q.    Thank you.

22              And we'll talk a little bit about the

23    underlying dispute in a minute.  But, sir, do you

24    consider yourself to be a private person?

25        A.    Very much so, yes.

```
 1        Q.    Why do you say that?
 2        A.    Because I -- I have a tendency to -- my wife
 3   and I hang out quite a lot.  We basically want to engage
 4   with our kids, family, and friends.  I spend time with
 5   my daughter, who is with us here today, and take her to
 6   her school activities.  I basically do many things
 7   that -- I just don't want to expose myself outside.  I
 8   pour a lot of my time into my work and the house that we
 9   live in.
10        Q.    Where do you presently live?
11        A.    I live in the Orange County area in California.
12        Q.    Have you ever lived in Texas?
13        A.    I have, yes.
14        Q.    How long, sir?
15        A.    I lived in Texas for about 15 years, in both
16   the Houston area for a couple of years as well as the
17   Austin area for -- for about a decade.  And I believe
18   that covers -- yes.
19        Q.    Thank you.
20              Do you still maintain a connection to
21   Harris County?
22        A.    I do, yes.
23        Q.    How so?
24        A.    My wife and I both visit here frequently.  As I
25   said, I lived here for about 15 years.  And my wife also
```

# Exhibit "F"

Marco Molina, SBN 338185
Shaia Stambuk, SBN 329240
**BAKER & HOSTETLER LLP**
600 Anton Boulevard, Suite 900
Costa Mesa, California 92626
Telephone: 714.754.6600
Email: mmolina@bakerlaw.com
　　　sstambuk@bakerlaw.com

Carlos Ramos-Mrosovsky
New York Bar No. 4554283
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
Telephone: 212.589.4200
Email: cramosmrosovsky@bakerlaw.com
*Pro Hac Vice Forthcoming*

*Attorneys for Petitioner*
GERARD RICHARD WILLIAMS III

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARD RICHARD WILLIAMS III, | Case No.: 2:25-cv-1619 |
| Petitioner. | **DECLARATON OF GERARD RICHARD WILLIAMS III IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING** |

1

EXH. E-001

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

I, GERARD RICHARD WILLIAMS III, declare as follows:

1.    Unless otherwise stated, the following facts are based on my personal knowledge and/or contained in documents exhibited to this Declaration in support of my *ex parte* application ("**Application**") for discovery in aid of foreign proceedings pursuant to 28 U.S.C. § 1782. If I am called as a witness, I could and would testify to the same as stated herein.

## I.    INTRODUCTION

2.    I am an inventor, entrepreneur, and engineer. I have secured more than fifty patents throughout my career. I also founded NUVIA Inc. and served as its chief executive through its acquisition by Qualcomm Technologies in 2021. I am now the Senior Vice President of Engineering at Qualcomm Technologies.

3.    I live in this District along with my wife, Tuyen (Tiffany) Williams, and our children.

4.    My wife is originally from Vietnam. Throughout our marriage, we have forged a strong relationship with members of the Vietnamese community located in this District, including one of the more famous and popular Vietnamese singers, Huynh Minh Hung (also known by his stage name "Đàm Vĩnh Hưng"). Mr. Hung is a famous performer who has also appeared on popular Vietnamese singing shows like The Voice of Vietnam and The X Factor Vietnam.

5.    Mr. Hung was previously a close friend of myself and my wife for approximately 8 years. He visited me and my family regularly at our home.

6.    Since last year, however, Mr. Hung and I have been embroiled in a very high-profile legal dispute arising from a performance he gave during a Vietnamese New Year's party at my home. In October 2024, Mr. Hung filed a case against me in Orange County court seeking damages for injuries he allegedly sustained during that performance. This litigation is styled as *Huynh vs. Williams III*, No. 30-2024-01436961-CU-PO-CJC. A true and correct copy of the Complaint in that litigation is included as **Exhibit 1** to this Declaration. In November 2024, I filed a case against

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

EXH. F - 002

1     Mr. Hung in Orange County court seeking relief from him. This litigation is styled

2     as *Williams III v. Huynh*, No. 30-2024-01443938-CU-PO-CJC. A true and correct

3     copy of the First Amended Complaint in that litigation is included as **Exhibit 2** to

4     this Declaration.

5         7.      Those cases have since been voluntarily dismissed. In December 2024,

6     Mr. Hung voluntarily dismissed his case against me with prejudice. A true and correct

7     copy of Mr. Hung's voluntary dismissal, with prejudice, of his case against me is

8     included as **Exhibit 3** to my Declaration. And in January 2025, I voluntarily

9     dismissed my case against Mr. Hung. A true and correct copy of my voluntary

10    dismissal, without prejudice, of my case against Mr. Hung is included as **Exhibit 4**

11    to my Declaration.

12        8.      Because Mr. Hung is a well-known Vietnamese celebrity and performer,

13    our legal dispute became regular tabloid fodder in Vietnam and elsewhere. To this

14    day, Vietnamese media companies, social influencers, YouTubers, and other online

15    personalities in the Vietnamese community publish content about my family. Some

16    of this content includes vile and defamatory statements.

17        9.      In addition to being defamed in public online forums, our family has

18    also personally received repeated death threats and harassing correspondences from

19    members of the Vietnamese community in the U.S. and in Vietnam.

20       10.     In late December 2024, I brought a defamation case in Texas state court

21    against four U.S.-domiciled individuals (Dai Duong Pham, Thu Thuong Doan, Tu

22    Nguyen, and Nhu Ta) seeking damages and other relief in response to content that

23    they published online about my family's character and reputation. That action is

24    ongoing. This litigation is styled as *Williams III v. Pham, et al.*, No. 1242113. A true

25    and correct copy of the Second Amended Petition in that litigation is included as

26    **Exhibit 5** to my Declaration.

27       11.     I am also seriously contemplating pursuing civil and administrative

28    remedies in Vietnam against other persons domiciled in Vietnam who are also

EXH. F - 003

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

1  smearing my and my family's reputation and making disturbing threats against me,

2  my wife, and daughter (the "**Contemplated Vietnamese Proceedings**").

3      12.   I am bringing this Application in aid of the Contemplated Vietnamese

4  Proceedings. Specifically, I seek an order that would allow me to take discovery from

5  Mr. Hung, a U.S. permanent resident who resides in this District at 21131 Greensboro

6  Lane, Huntington Beach, CA 92646. Mr. Hung has personal knowledge of the nature

7  and circumstances behind the smear campaign and the threats against my family as

8  well as the identities of Vietnam-based persons who are aiding and/or executing this

9  misconduct.

10  **II.    MY LITIGATION WITH MR. HUNG IN CALIFORNIA**

11      13.   On February 19, 2024, Mong Linh Nguyen, a mutual friend of myself,

12  my wife, and Mr. Hung, hosted a party at my and my wife's residence in this District

13  to celebrate the Vietnamese New Year. During that event, Mr. Hung performed

14  several songs. While performing, Mr. Hung climbed onto a fountain base located in

15  the courtyard of our home and then recklessly tried to jump onto the fountainhead

16  that was located at the center of the fountain. The fountainhead and pedestal

17  immediately toppled under his weight. Footage of this incident ("the **Incident**") is

18  widely available on the internet.[1]

19      14.   Upon returning to Vietnam following the Incident, Mr. Hung posted a

20  short video clip on his Facebook account, sharing that he was doing fine. Mr. Hung

21  also unequivocally admitted attempting a grand exit, taking what he termed a risk,

22  by climbing onto the fountain's centerpiece – an action that ultimately led to his fall,

23  Plaintiff's property damage, and his injury. A true and correct screenshot from this

24  video is attached as **Exhibit 27** to my Declaration.

25      15.   On October 31, 2024, Mr. Hung filed suit against me in Orange County

26  Superior Court alleging negligence and premises liability and seeking damages in

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

---

[1] A video of this incident can be accessed at: https://www.youtube.com/watch?v=OKW8q9BTj0k.

EXH. F - 004

1   relation to the alleged injuries he sustained from the fountain incident. *See* **Exhibit**
2   **1**.

3       16.     On December 2, 2024, I filed suit against Mr. Hung in Orange County
4   Superior Court to recover the damages he caused to my residence as a result of his
5   reckless conduct, among other requested relief. *See* **Exhibit 2**.

6       17.     On December 2, 2024, Mr. Hung filed a signed and executed Form CIV-
7   110 in his case declaring his intent to dismiss the causes of action against me "[w]ith
8   prejudice." *See* **Exhibit 3**.[2]

9       18.     On January 6, 2025, I filed a signed and executed Form CIV-110 in my
10  case declaring my intent to dismiss the causes of action against Mr. Hung "[w]ithout
11  prejudice." *See* **Exhibit 4**.

12  **III.    THE SMEAR CAMPAIGN AND THREATS AGAINST ME AND MY**
13          **FAMILY**

14      19.     The Vietnamese community paid close attention to the legal disputes
15  between me and Mr. Hung ("the **Lawsuits**") over the last year. Each time a filing
16  was made in one of the legal cases, the Vietnamese press, social media influencers,
17  and online personalities in the Vietnamese community milked it for many dozens of
18  videos and hours of content. Now that the Lawsuits have been dismissed, the same
19  persons continue to publish on a daily basis about these legal matters, speculating as
20  to why they were dismissed and what lies ahead.

21      20.     Unfortunately, much of this online content attempts to villainize me and
22  my family. As indicated above, Mr. Hung is one of the most well-known celebrities

23  _____
    [2] There is a dispute as to whether the case was dismissed immediately after the filing of this request
24  for dismissal because the clerk did not enter a dismissal order. I understand from my lawyers that
    it is well-settled under California law that a case is immediately dismissed, and a court is divested
25  of subject matter jurisdiction over that case, the moment that a plaintiff requests that his case be
    dismissed (as was the case here), regardless of whether the clerk entered an order dismissing the
26  case. *See Kaufman v. Superior Ct.*, 115 Cal. 152, 155 (1896); *Assoc. Convalescent Enters. v. Carl*
    *Marks & Co., Inc.*, 33 Cal. App. 3d 116, 120 (1973); *Aetna Cas. & Surety Co. v. Humboldt Loaders,*
27  *Inc.*, 202 Cal. App. 3d 921, 926 (1988). For that reason, it is my understanding that the case against
    me was dismissed with prejudice on December 2, 2024 and I have moved the court in that case to
28  direct the clerk to enter an order confirming the same.

EXH. E - 005

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

1 and famous singers in Vietnam. A story about him will attract tens or even hundreds
2 of thousands of clicks. And because Mr. Hung has so many fans, in Vietnam and in
3 the Vietnamese community in the United States, many people have decided to attack
4 my family and smear our reputations.

5     21.    As stated above, I am pursuing a defamation case and seeking injunctive
6 relief in Texas court against four online personalities in the Vietnamese community
7 who are domiciled in the U.S.

8     22.    Those individuals have made numerous untrue and deeply damaging
9 accusations, which are magnified and repeated *ad nauseum* over the Internet.

10     23.    For example, they have accused me of having cheated on my wife based
11 on the mere fact that my wife's name is not on the deed of our house. A true and
12 correct link to this video, with relevant time stamps identified and translated, is
13 attached as **Exhibit 6**. They have stated, and have also encouraged statements from
14 others, saying that I am as "immoral as a stinky whore" and falsely accused me of
15 using my wealth to "buy" my friendship with Mr. Hung and other high-profile
16 members within the Vietnamese community. A true and correct copy of these
17 statements, with English translation, is attached as **Exhibit 7**.

18     24.    Those individuals and those interacting with their content have similarly
19 called my wife a "whore." *See* **Exhibit 7**. They have accused me and my wife of
20 being "among the dirtiest [couple] of this century" and attacked our character as
21 being "filthy and rotten." *See id.* They also accused my wife and me of being an
22 "incredibly despicable" couple that "want[s] to devour others" and is "inhuman." *See*
23 *id.* They also falsely accused us of having coerced Mr. Hung to dismiss his case
24 against me. *See* **Exhibit 5** at 35-37.

25     25.    Other such statements include:

26     a) Gerard Williams is a "dishonest, deceitful, inhuman insurance fraudster."

27

28

6

DECLARATION OF GERARD RICHARD WILLIAMS III IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO
28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

EXH. E 006

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

b) Gerard Williams is a person who "engaged in illegal activities by defrauding the insurance carrier and misusing insurance proceeds by not paying Dam Vinh Hung."

c) Gerard Williams is a "Scammer" and "Liar" because he induced Dam Vinh Hung into dismissing the lawsuit."

d) Gerard Williams is "crueler than communists as he induced Dam Vinh Hung into dismissing the injury lawsuit."

e) Gerard Williams "bought fame with money" and is likened to "a stinky prostitute" and Gerard Williams is "a hypocrite."

Below are some other examples of Mr. Hung's fans attacking my wife.

a) Gerard Williams' wife is "worse than a prostitute."

b) Gerard Williams' wife is "a scammer and cheater because she induced Dam Vinh Hung to drop the lawsuit."

c) Gerard Williams' wife is an "odorous prostitute,"

d) Gerard Williams' wife is "hypocrite," "uneducated," and "abuser" because she coerced Dam Vinh Hung into dismissing the premise liability lawsuit.

e) Gerard Williams' wife is "lascivious and a lustful prostitute who has a dirty past."

f) Gerard Williams' wife engaged in sexual misconduct, promiscuity, and immoral behavior, in response to Defendant Doan written publication to Gerard Williams regarding $300,000 donation to Dam Vinh Hung Show.

g) Tuyen Williams, "spent all day planning how to harm and wishing Dam Vinh Hung death."

h) Gerard Williams cheated on his wife financially and he will divorce his wife, and she will be penniless.

*See* **Exhibit 5** at 35-37. These slanderous and libelous statements are offensive, deeply hurtful, and blatantly dehumanizing.

EXH. F-007

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

26.    Additionally, one of these Texas defendants extorts my wife every day on her webcast by telling her to kneel down, beg Mr. Hung for forgiveness, and pay him money for his alleged injuries.

27.    These attacks receive tens of thousands of views.[3] And a common theme to these attacks is that I should pay Mr. Hung money for my supposed role in his supposed injuries. A true and correct copy of the statements with English translations is attached as **Exhibit 8** to my Declaration. Simply put, this is a form of extortion.

28.    Similar attacks have been waged against me and my family on social media by social media users domiciled in Vietnam. For example:

- Tran My Lien, a Facebook user located in Ho Chi Minh City, Vietnam, accused me of being a "billionaire gangster." A true and correct copy of this statement, with English translation, is attached as **Exhibit 9** to my Declaration.

- Similarly, Phong Tran, a Facebook user also located in Ho Chi Minh City, Vietnam, falsely alleged that my wife and I are "using the media to manipulate public opinion [sic] to our benefit." A true and correct copy of this statement, with English translation, is attached as **Exhibit 10** to my Declaration.

- Tuong Vy Hoang, another Facebook user located in Vietnam, described my wife and I as "[a] despicable, filthy nouveau riche couple, from husband to wife, who live very 'hypocritically'—truly disgusting." A true and correct copy of this statement, with English translation, is attached as **Exhibit 11** to my Declaration.

- Nhu Ngoc, a Facebook user based in Vietnam, stated that "[s]inger [Tuyen (Tiffany) Williams] and her husband are truly despicable, real scoundrels, despicable and cowardly. It's so bad that everyone despises them. They committed insurance fraud, used up all the money, didn't let

---

[3] For example, the video in **Exhibit 6** has received at least 41,443 views since January 1, 2025.

EXH. F  008

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

> [Mr. Hung] claim it, and even harmed [Mr. Hung]. This is media
> manipulation…poor [Mr. Hung]." A true and correct copy of this
> statement, with English translation, is attached as **Exhibit 12** to my
> Declaration.

29.     Media organizations based in Vietnam have parroted many of these false allegations and platformed the smear campaign against me and my family. This can be seen in online content posted this month by the following Vietnamese periodicals: (i) Tuoi Tre Cuoi (https://cuoi.tuoitre.vn); (ii) 2sao (https://2sao.vn); (iii) Bao Giao Thong (https://baogiaothong.vn); (iv) Tien Phong Online (https://tienphong.vn). True and correct copies of these articles, with English translations, are attached as **Exhibits 13, 14, 15, and 16**, respectively, to my Declaration.

30.     Because of the smear campaign, my family and I have received myriad threats from individuals with ties to Vietnam and/or the Vietnamese-American community. True and correct copies of these threats are attached as **Exhibit 17** to my Declaration. For example, there is an online campaign dedicated to "***murdering***" me based on the false premise that I somehow caused Mr. Hung's injuries. That campaign ominously states:

> Don't fear the vile and cruel billionaire. ***Just send someone
> to murder Gerard***; why let him take up space on this Earth?
> Gerard ruined [Mr. Hung]'s entire singing career.

31.     A related comment states: "Fully back Derek Pham [one of the Texas Defendants] in the ongoing plan to ***murder Gerard*** for ruining DVH [Dam Vinh Hung] *do not let him live*." *See* **Exhibit 17**.

32.     There are many other online posts that I have seen that advocate for Mr. Hung's fans to ***murder me***.

33.     Another post directed to my wife threatens: "You and your husband will pay a very high price." *See* **Exhibit 7**.

EXH. F - 009

34. We have also seen online posts that share my and my family's personal information, our home address, and photos of our children.

35. My family and I also received profane voice messages from anonymous callers that are menacing and threatening in nature.

36. For example, my wife received an anonymous call through Facebook Messenger where the caller ***threatened to kidnap our daughter*** if the dispute with Mr. Hung continued. Within five minutes of receiving this call, my wife's Facebook account was hacked.

37. I take these threats and defamatory statements very seriously. For that reason, I am contemplating hiring personal security to protect me and my family. Additionally, as a result of these defamatory statements, my reputation in the Vietnamese-American community, of which I consider myself a member by marriage, has been damaged. I am pursuing whatever civil remedies are available to me and my family pursuant to U.S. law, including, but not limited to, the ongoing defamation case in Texas.

### IV.   THE CONTEMPLATED VIETNAMESE PROCEEDINGS

38. My family and I are seriously contemplating civil and administrative remedies under Vietnamese law. As indicated above, there are social media personalities domiciled in Vietnam who have defamed, harassed, and threatened me and my family.

39. I have retained Vietnamese counsel to analyze and review the offending material and to discern the types of claims that can be brought under Vietnamese law.

40. My Vietnamese counsel advises me that Vietnamese law prohibits the use of false information to distort, slander, or damage the honor, dignity, and reputation of individuals. Specifically, Article 34 of the Vietnamese Civil Code of 2015 states that "[t]he honor, dignity and reputation of an individual is inviolable and is protected by law" and that "an individual whose honor, dignity and reputation is adversely affected by information shall, in addition to the right to request refutation

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

EXH. E, 010

1    of such information, have the right to request that the person providing such

2    information publicly apologize, correct [the information], and pay compensation for

3    loss or damage."

4        41.    Additionally, Article 99 of Decree 15/2020/ND-CP (2020) promulgates

5    an administrative fine ranging from VND 20,000,000 to VND 30,000,000 [about

6    $800-$1200] for each instance of "providing false information with the aims of

7    distorting, slandering or damaging the prestige, honor and dignity of other

8    organizations or individuals," in violation of regulations on postal services,

9    telecommunications, radio frequencies, information technology and electronic

10   transactions.

11       42.    Many of the harassing parties have posted anonymously or use aliases.

12   **V.     REQUESTED DISCOVERY**

13       43.    To assist the Contemplated Vietnamese Proceedings, I am seeking

14   limited discovery from Mr. Hung.

15       **A. <u>Mr. Hung Possesses Information that Will Aid the Contemplated
          Vietnamese Proceedings</u>**

16

17       44.    Mr. Hung has personal knowledge of the nature and scope of the smear

18   campaign against me and my family as well as the identities of the individuals

19   responsible for the smear campaign.

20       45.    This is evident from January 10-11, 2025 interviews of one of the Texas

21   defendants, who unequivocally admitted (on a Vietnamese media outlet called "TD

22   Media TV", whose owner has a close relationship with Mr. Hung) *to signing a non-*

23   *disclosure agreement with others so that he could obtain more information to use*

24   *against me and my family.* True and correct links to these video interviews are

25   provided      here:      https://www.youtube.com/watch?v=Iob2Q1PZ4du      and

26   https://www.youtube.com/watch?v=DCK4aXjvkHE. On information and belief, I

27   believe there may be similar agreements with persons and media organizations

28   located in Vietnam.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

EXH. E_011

46.     On information and belief, Mr. Hung, as well as the individuals responsible for these defamatory and harassing statements, are receiving money from individuals located in Vietnam to fund their efforts. This financial support is arranged through Facebook Messenger and Zalo, a popular Vietnamese messaging application with a digital wallet feature called ZaloPay.

47.     I also know from my dealings with Mr. Hung that he is well-connected to the Vietnamese media and Vietnamese-based social media influencers, given that he has been a Vietnamese icon for decades. He can offer testimony and/or documents that will further reveal the malicious and harassing scope of the campaign waged against me and my family.

48.     I am enclosing as **Exhibit B1 and B2** to this Application the subpoenas that identify the document requests and matters for examination that I will serve on Mr. Hung if this Application is granted. The document requests include the following:

- Communications between Mr. Hung and Tran My Lien, Phong Tran, Tuong Vy Hoang, and Nhu Ngoc regarding the Incident,[4] the Lawsuits,[5] and the Williams Family, from February 19, 2024 to present.[6]

- Communications between Mr. Hung and Tuoi Tre Cuoi, 2sao, Bao Giao Thong, Tien Phong Online, and any other Vietnam-based persons or entities regarding the Incident, the Lawsuits, and the Williams Family, from February 19, 2024 to present.

- Documents and communications between Mr. Hung and any Vietnam-based persons or entities sufficient to show any executed or contemplated non-

---

[4] Defined to mean the fountain incident that took place on February 19, 2024, at our residence, whereby Mr. Hung was allegedly injured.
[5] Defined to mean the two Orange County lawsuits, styled as *Huynh vs. Williams III*, No. 30-2024-01436961-CU-PO-CJC and *Williams III v. Huynh*, No. 30-2024-01443938-CU-PO-CJC.
[6] Defined to mean myself (Gerard Richard Williams III), my wife (Tuyen (Tiffany) Williams) and my children.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

12

1    disclosure agreement relating to the Incident, the Lawsuits, and the Williams
2    Family, from February 19, 2024 to present.

3    • Documents and communications between Mr. Hung and any Vietnam-based
4    persons or entities sufficient to show monetary transactions relating to the
5    Incident, the Lawsuits, and the Williams Family, from February 19, 2024 to
6    present.

7    • Documents and communications between Mr. Hung and Mr. Hung's Public
8    Relations Team[7] sufficient to show any media strategy or plan in Vietnam
9    relating to the Incident, the Lawsuits, and the Williams Family, from February
10   19, 2024 to present.

11        **B. Mr. Hung Resides or Is Found in This District**

12        49.    As stated earlier, Mr. Hung is a U.S. permanent resident who resides in
13   this District at 21131 Greenboro Lane, Huntington Beach, CA 92646. A true and
14   correct copy of the Grant Deed for this property is attached as **Exhibit 18** to my
15   Declaration. Based on publicly available information, I understand Mr. Hung took a
16   homestead exception on that property in recent years, further demonstrating his
17   presence in this District. A true and correct copy of the 2024 Tax assessment on this
18   property is attached as **Exhibit 24** to my Declaration.

19        50.    Based on my prior dealings with Mr. Hung, I understand that he has
20   maintained a residence in this State since 2013.

21        51.    Mr. Hung has subjected himself to the personal jurisdiction of the courts
22   in this District on more than one occasion, including in each of the cases in which he
23   and I have been adverse parties, as well as in a 2022 divorce proceeding.

24        52.    In the lawsuit Mr. Hung initiated against me, he specifically alleged he
25   was "a resident of the City of Huntington Beach, County of Orange, State of
26   California." *See* **Exhibit 1**, ¶ 2.

27

28   [7] Defined to mean all persons or entities that Mr. Hung works or consults with, formally or
     informally, to manage his reputation and media relations.

EXH. F 013

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

53.   I also know that Mr. Hung uses and maintains a personal cell phone in this District, from which he makes frequent social media posts geotagged to this District and showing his California home and car, among other things. Most recently, Mr. Hung spent the holidays in Huntington Beach from November – December 2024, according to his social media activity. True and correct copies of Mr. Hung's relevant social media posts are attached as **Exhibit 19** to my Declaration.

54.   Mr. Hung also said in a November 2021 news article that he "chose Southern California to live." In this article, Mr. Hung indicated he also had other properties elsewhere in the United States. A true and correct copy of this article is attached as **Exhibit 20** to my Declaration.

55.   Mr. Hung performed in at least 18 shows in the United States, including three in California, in 2024. True and correct copies of Mr. Hung's social media posts containing his 2024 tour dates are attached as **Exhibit 21** to my Declaration.

56.   Mr. Hung was previously married to Lien Jackie Pham for nearly eighteen years. The couple married on June 13, 2004, separated on February 22, 2018, and divorced in Orange County, CA on April 1, 2022. A true and correct copy of this April 1, 2022 divorce filing is attached as **Exhibit 22** to my Declaration. Mr. Hung accepted service for this proceeding at an address in Riverside County, CA, located in this District. A true and correct copy of this proof of summons is attached as **Exhibit 23** to my Declaration.

57.   Mr. Hung has multiple other familial and social ties to this District. According to a November 2021 news article, Mr. Hung has had relatives living in the United States since 1982, and his family has up to 60 people living in the Los Angeles area. *See* **Exhibit 20**. On July 19, 2023, Mr. Hung posted photos showing himself at a cemetery, visiting the graves of relatives in the United States. A Jennifer Han Vu, to whom Mr. Hung repeatedly refers to as his sister on social media, resides at 1731 S. 2nd Ave., Arcadia, CA 91006. This address has also been associated with Mr.

EXH. E 014

Hung. A true and correct copy of a deed of trust for this Property with Mr. Hung

listed as the borrower is attached as **Exhibit 25** to my Declaration.

58.     From April 2019 – January 2022, Mr. Hung was the manager of a

California-registered entity called Tieng Hat Viet USA LLC, which was engaged in

organizing events and concerts. A true and correct copy of this company's corporate

registration is attached as **Exhibit 26** to my Declaration.

## II.    I NEED A COURT ORDER TO OBTAIN THIS DISCOVERY FROM
## MR. HUNG

59.     Any attempt to obtain the documents I am seeking from Mr. Hung in an

amicable manner would be an exercise in futility. Despite our years of friendship, my

relationship with Mr. Hung is now nonexistent.

60.     Furthermore, I will not be able to obtain this discovery in Vietnam. My

Vietnamese counsel informs me that pretrial discovery is not an available mechanism

in Vietnam in the manner that is available in the United States, and that the discovery

I am seeking is likely outside the reach of the Vietnamese courts.

61.     I am not contemplating naming Mr. Hung as a party to the Contemplated

Vietnamese Proceedings. Accordingly, the tribunals that oversee the Contemplated

Vietnamese Proceedings will not have authority to compel Mr. Hung to provide me

with the discovery I am seeking in this Application.

62.     I am also advised by my Vietnamese counsel that the discovery I am

seeking here does not violate any restrictions under Vietnamese law on evidence

gathering.

63.     Finally, I am advised by my Vietnamese counsel that a plaintiff in a civil

or administrative proceeding in Vietnam may introduce evidence obtained from any

source, including through U.S. discovery. Therefore, if I were to gain access to the

requested documents and testimony here, I will be able to present them as evidence

in the Contemplated Vietnamese Proceedings.

* * *

BAKER & HOSTETLER LLP
ATTORNEYS-AT-LAW
COSTA MESA, CA

15

EXH. E-015

1         I, GERARD RICHARD WILLIAMS III, pursuant to 28 U.S.C. § 1746, declare

2    under penalty of perjury that the foregoing is true and correct.

3

4    Executed on February 25, 2025

5

6

7

8

9    _____

10        GERARD RICHARD WILLIAMS III

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA, CA

16

DECLARATION OF GERARD RICHARD WILLIAMS III IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO
28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

# Exhibit "G"

Case 8:25-mc-00005-FWS-ADS    Document 1-10    Filed 02/25/25    Page 2 of 93    Page
ID #:425

1242113

Harris County - County Civil Court at Law No. 1

2/17/2025 12:00 AM
Teneshia Hudspeth
County Clerk
Harris County

CAUSE NO. 1242113

| | | |
|---|---|---|
| GERARD RICHARD WILLIAMS III | § | IN THE COUNTY CIVIL COURT |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | AT LAW NO. 1 |
| | § | |
| DAI DUONG PHAM (A/K/A DEREK PHAM), | § | |
| THU THUONG DOAN, TU NGUYEN, | § | |
| (A/K/A THANH TU NGUYEN) and NHU TA, | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S VERIFIED SUPPLEMENTAL SECOND AMENDED PETITION, APPLICATION FOR TEMPORARY INJUNCTION, PERMANENT INJUNCTION, AND REQUEST FOR DISCLOSURES

COMES NOW Plaintiff, Gerard Richard Williams III (hereafter "Gerard Williams" or "Plaintiff Gerard Williams"), and files this Verified Supplemental Second Amended Petition, including an Application for Temporary Injunction, Permanent Injunction, and Request for Disclosures, and respectfully shows the Court as follows:

### I.    INTRODUCTION

*[It's] hard to believe that anyone with an average level of intelligence could think that by using freedom of speech as an excuse they could say all of these insults . . . freely on social media and believe that the target won't feel attacked, and that the system won't respond . . .*

The above statement, made just last month by the Spanish Supreme Court in the *Dalas Review* matter (2023),[1] emphasizes that in today's world, defamatory and overtly harassing

---

[1] *See* Azmi Haroun, *Spanish YouTuber Dalas Review will have to read his defamation sentence on his channel weekly for a month. He was taken to court after calling his ex-girlfriend's dad a 'sick coward' who hits 'defenseless women'*, BUSINESS INSIDER (May 24, 2023), ̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲̲. In that case, Spanish YouTuber Daniel Santomé, known as *Dalas Review*, was held liable for insulting his ex-father-in-law in multiple videos, calling him a "maltratador" (abuser) among other derogatory terms. The *Dalas Review* Court ordered the Youtuber Daniel Santomé to pay damages to the victim and read the court's decision on his channel weekly. The victim's daughter celebrated the Judge's ruling: "To all the [content] creators who have received insults and been harassed by this person or other toxic people, I want to say: It's

1

EXH. G_001

EXHIBIT 5 PAGE 307

Case 8:25-mc-00005-FWS-ADS     Document 1-10     Filed 02/25/25     Page 3 of 93     Page
ID #:426

comments on social media platforms—as well as viewer or subscribers' endorsement of such comments—are not protected free speech. Freedom of speech has some critical boundaries, and like in *Dalas Review*, those boundaries have been crossed here.

This case arises from Defendants' deliberate and egregious campaign of daily internet defamation and criminal cyber harassment aimed at spreading misinformation to the over 300,000 Vietnamese American residents in Texas (including more than 150,000 residents in Houston alone) [2] in order to incite hysteria and potential violence against Plaintiff and his family.

Since at least November 2024, Defendants have undertaken a targeted defamation and harassment campaign on their YouTube channels and Facebook pages and livestreams against Plaintiff and his family. On information and belief, the Defendants are working jointly as fans, friends, relatives, and/or paid Youtubers and/or Facebook commentators with whom Dam Vinh Hung, a famous Vietnamese singer ("**Dam Vinh Hung**"), has a close relationship. They include:

> Defendant Tu Nguyen (a/k/a Thanh Tu Nguyen) ("**Nguyen**");
>
> Defendant Nhu Ta ("**Ta**");
>
> Defendant Dai Duong Pham (a/k/a Derek Pham) ("**Pham**"); and
>
> Defendant Thu Thuong Doan ("**Doan**").

---

time to stop putting your head down and being scared of them, damn it. Be brave like my family has been. And you're welcome for paving the way."

[2] The Greater Houston area is home to the second-largest Vietnamese population in the country, with approximately 143,000 people, according to 2019 numbers from the Pew Research Center. *See* Rosie Nugyen, *ABC13 shares stories of Vietnamese refugees who made all-or-nothing escape and rebuilt their lives*, ABC13 HOUSTON (June 1, 2022), ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░ ; see also Top 10 U.S. metropolitan areas by Vietnamese population, 2019, Pew Research Center (Apr. 29, 2021), ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░ . As of 2023, approximately 2.4 million Vietnamese Americans reside in the United States, with Texas being home to about 14% of this population. This equates to roughly 336,000 Vietnamese Americans in Texas. *See U.S. Census Bureau Releases Key Stats in Honor of 2023 Asian American, Native Hawaiian, and Pacific Islander Heritage Month*, U.S. Dep't of Commerce (May 1, 2023), ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░ ░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░░ .

EXH. G_002

Case 2:25-cv-07351-JC   Document 13-4   Filed 09/04/25   Page 25 of 94   Page ID
#:477
Case 8:25-mc-00005-FWS-ADS   Document 1-10   Filed 02/25/25   Page 4 of 93   Page
ID #:427

Defendants' smear campaign stems from Plaintiff's former lawsuit with Dam Vinh Hung. The lawsuit was based on a self-inflicted injury that Dam Vinh Hung sustained when performing at Plaintiff's residence in February 2024. Dam Vinh Hung sought over $50,000,000 in damages against Plaintiff. But Dam Vinh Hung voluntarily dismissed the lawsuit at the end of last year.[3]

Despite the dismissal, Defendants continue in their coordinated efforts to tarnish Plaintiff and his family's reputation through inflammatory posts and online interviews.

These posts, interviews and comments promulgated by Defendants are toxic, untrue, and in some instances, extremely threatening and alarming. As set forth herein, Defendants have encouraged their fans to contact Plaintiff and coerce him into paying Dam Vinh Hung millions of dollars. Defendants have provided viewers with Plaintiff's home address and information about his family. Defendants' viewers, subscribers and commentators have called Plaintiff and his wife terrible, derogatory terms. Some of them have even made death threats and called for Plaintiff to be murdered, causing Plaintiff to fear for his and his family's lives. And in each instance, Defendants took no action to discourage their subscribers or commentators from making such comments.

These statements go far beyond protected free speech. The slanderous, libelous, and violent statements made and encouraged by Defendants have caused significant harm to both Plaintiff Gerard Williams' reputation and that of his wife, exposing them to public hatred, contempt, ridicule, financial damage, and fear for their lives. Plaintiff respectfully asks that this Court intervene to stop Defendants' harmful, coordinated actions.

---

[3] Although Dam Vinh Hung initially dismissed the premises liability action against Plaintiff with prejudice on December 2, 2024, he reversed his position fourteen (14) days later. Both parties are now awaiting the trial court's decision on whether to adhere to California Supreme Court precedent, which establishes that a request for dismissal with prejudice is legally irreversible once filed. After such a filing, the court is deprived of jurisdiction over the matter as a matter of law.

EXH. G_003

Case 2:25-cv-07351-JC    Document 13-4    Filed 09/04/25    Page 26 of 94    Page ID
#:478
Case 8:25-mc-00005-FWS-ADS    Document 1-10    Filed 02/25/25    Page 5 of 93    Page
ID #:428

## II.    DISCOVERY CONTROL PLAN

1.      Plaintiff Gerard Williams asserts that discovery in this matter should be conducted pursuant to TEX. R. CIV. P. 190.3 (Level 2).

## III.    PARTIES

2.      Plaintiff GERARD RICHARD WILLIAM III is a private individual residing in California and a former resident of Texas and is still doing business in Texas. Relevant here, Plaintiff maintains a number of contacts in Houston's Vietnamese American community and regularly conducts business in this County.

3.      Defendant DAI DUONG PHAM (a/k/a Derek Pham) ("**Pham**") was personally served and has made a general appearance in this Court. Plaintiff asserts that this Defendant has waived his personal jurisdiction claim and venue challenge.

4.      Defendant THU THUONG DOAN ("**Doan**") was personally served and has made a general appearance in this Court. Plaintiff asserts that this Defendant has waived her personal jurisdiction claim and venue challenge.

5.      Defendant NHU TA (a/k/a Nhu Ngoc) ("**Ta**") was served and has made a general appearance in this Court.

6.      Defendant TU NGUYEN (a/k/a Thanh Tu Nguyen) ("**Nguyen**"), a Texas resident, was personally served and has filed an answer in this Court.

## IV.    THIS COURT CAN EXERCISE SUBJECT MATTER & PERSONAL JURISDICTION OVER ALL DEFENDANTS

7.      This Court has subject matter jurisdiction over this Second Amended Petition because the amount in controversy meets this Court's jurisdictional requirements under Tex. Gov't Code Sec. §§ 24.007, 24.008 and Tex. R. Civ. P. 47.

EXH. G_004

Case 2:25-cv-07351-JC    Document 13-4    Filed 09/04/25    Page 27 of 94    Page ID
#:479
Case 8:25-mc-00005-FWS-ADS    Document 1-10    Filed 02/25/25    Page 6 of 93    Page
ID #:429

8.      The Court has personal jurisdiction of Defendants Nguyen and Ta because both are

residents of Harris County, Texas. As stated above, both Defendants Nguyen and Ta have already

made appearances in this matter, and do not contest jurisdiction or venue.

9.      This Court may also exercise personal jurisdiction over non-resident Defendants

**Pham** and **Doan** because, *inter alia*: (i) each waived its challenge to personal jurisdiction by failing

to adhere to the special appearance requirements under Texas Rule of Civil Procedure 120a; (ii)

each has substantial contacts with Texas and targeted audience viewers, users, subscribers and

commentators located in Texas in posting their online content; (iii) the damage resulting from

Defendants Pham and Doan's conduct was felt, at least in part, in this county; and (iv) each is part

of a joint civil conspiracy with two Texas residents.

**A.  The Non-Resident Defendants Waived Their Challenge to Personal Jurisdiction.**

10.     Defendants Pham and Doan failed to strictly comply with Texas Rule of Civil

Procedure 120a's special appearance requirements to challenge personal jurisdiction. As such,

these non-resident Defendants waived their challenge to personal jurisdiction.

11.     Additionally, the two non-resident Defendants' motions challenging personal

jurisdiction are conclusory. Even if their assertions were accurate (they are not), Defendants failed

to substantiate their allegations with competent evidence, even for *in-camera* review.

**B.  This Court Alternatively Has Personal Jurisdiction Over the Non-Resident
     Defendants Under Texas's Long-Arm Statute.**

12.     In the addition and alternative, this Court can exercise personal jurisdiction over

Defendants Pham and Doan under the Texas long-arm statute because they are committing a tort,

in whole or in part, in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.

13.     Upon information and belief, Defendants Pham and Doan conspired with the two

Harris County Forum Defendants Nguyen and Ta. This conduct was undertaken with the intent to

EXH. G_005

Case 2:25-cv-07351-JC    Document 13-4    Filed 09/04/25    Page 28 of 94    Page ID
#:480
Case 8:25-mc-00005-FWS-ADS    Document 1-10    Filed 02/25/25    Page 7 of 93    Page
ID #:430

coerce Plaintiff into settling and paying Dam Vinh Hung. This campaign included a coordinated effort to tarnish the reputation of Plaintiff and his wife through inflammatory posts and interviews published by Defendants to encourage and endorse their guests and their viewers to slander Plaintiff and his wife.

14.    Defendants Pham and Doan intentionally targeted and interacted with residents of Texas (particularly those in Harris County) and have amassed hundreds of thousands of views on their content. Since December 2024, Defendant Pham has appeared nightly on his YouTube channel, *Nua Vong Trai Dat*, alongside guests such as Defendant Doan. Additionally, Mr. Mai Tien Dung of *TD TV*, a close associate of Dam Vinh Hung and/or his agent, invited Forum Defendant Nguyen to his livestream broadcasts on January 10, 2025, and January 11, 2025. During these livestreams, these non-resident Defendants interacted with Texas and Harris County viewers and subscribers, encouraging and endorsing slanderous statements against Plaintiff.

15.    Similarly, since December 2024, Defendant Doan has daily posted defamatory content on her Facebook page and YouTube channel. Through these posts, she has actively encouraged and endorsed her viewers to disparage Plaintiff and his wife. She has jeopardized Plaintiff's safety and endangered his life.

16.    These actions were neither untargeted nor random; rather, they were deliberately directed at Texas residents, distinguishing them from activities that might incidentally affect other states.

17.    By engaging in defamatory activity aimed at Vietnamese American Texas residents, Defendants had fair warning that they could be sued in Texas. If one chooses to instigate a conflict in Texas, it is reasonable to expect the matter to be resolved in this Texas Court.

EXH. G_006

18.     The non-resident Defendants have failed to challenge each basis for personal jurisdiction, although it is their burden.

### V.     VENUE IS PROPER IN THIS COURT

19.     Venue is proper in Harris County because it is where all or a substantial part of the events at issue here took place. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(A)(1). Additionally, Defendants Ta and Nguyen reside in Harris County, and all claims against all Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences. *See id.* §§ 15.005, 15.002(a)(2).

20.     Alternatively, non-resident Defendants Pham and Doan waived their venue challenge because they failed to raise the issue in their first pleading in response to the lawsuit with competent facts and evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 15.063; *Gordon v. Jones,* 196 S.W. 3d 376, 383 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

### VI.     FACTUAL BACKGROUND[4]

**A. False and Malicious Internet Defamation and Cyber Harassment Conducted by Defendant Pham.**

**1. Defamatory Smear Campaign on Defendant Pham's YouTube Livestream**

21.     On December 8, 2024, December 12, 2024, December 13, 2024, and every day thereafter, Defendants Pham and Doan, conspired with forum Defendant Nguyen, orchestrated a defamatory smear campaign through Defendant Pham's YouTube livestream channel, *Nua Vong Trai Dat TV* (https://www.youtube.com/channel/UCfl_G9BwH-DhtNn-y0q_7aA). Defendant Pham's channel has amassed over 362,000 subscribers, and the total number of views on all of his videos exceeds 180 million.

---

[4] As incorporated and adopted from Appendix B and Plaintiff's Affidavit attached hereto as Appendix C.

EXH. G_007

22.     Each video targeted Plaintiff and Plaintiff's wife. Each session lasted two to three and a half hours and invited and encouraged listeners, commentators, and subscribers—particularly those in Texas and Harris County— and other places to interact by calling in, verbally commenting, or leaving messages about Plaintiff and his pending lawsuit with Dam Vinh Hung.

23.     The alarming content in the smear campaign has escalated significantly over the last four months. For example, during the livestream on December 13, 2024, a caller using a phone number ending in 510 allegedly contacted Defendant Pham. During the livestreamed call, Defendant Pham repeatedly invited the "510 Caller" to return to the livestream, and further encouraged and incited to wear a billboard and stage a protest outside Qualcomm in San Diego (where Plaintiff presently serves as a Senior Vice President of Engineering). The protest was to allegedly demand "Justice for Dam Vinh Hung, who lost three tocs at Plaintiff Gerard Williams' home without compensation due to Plaintiff's negligence, cruelty, and misappropriation of the insurance proceeds which belong to Dam Vinh Hung."

24.     Defendant Pham further told his livestream audience that Plaintiff sent his wife, Tuyen Williams, to Vietnam in order to meet with reputable media outlets, in an effort to smear singer Dam Vinh Hung's name. This allegation is entirely untrue.

25.     The Williams did not travel to Vietnam since the premise liability lawsuit was filed and at no time has Plaintiff make any comment to any media outlet or any member of the press in Vietnam (The Socialist Republic of Vietnam) about his dispute with Dam Vinh Hung.[5] His wife did make a one-time response to one newspaper, but her comment was truthful and based on statements made in Dam Vinh Hung's public complaint.

26.     In a statement made by Dam Vinh Hung to *Thanh Nien* on June 11, 2024, he

---

[5] He answered PhoBolsa TV twice in California and the gist of answer was nobody can make a decision for him in the lawsuit between the singer and himself, as it is a private matter concerning him.

EXH. G_008

alleged: "On February 19, 2024, Mr. Gerard Richard Williams III misused a concrete fountain by

turning it into a stage and a table for beverages during a party. This caused the fountain to topple

and fall, injuring singer Đàm Vĩnh Hưng's foot."

27.    This statement is patently false. The accident was not Plaintiffs' fault at all. Dam

Vinh Hung's injury was a self-inflicted product of his own negligence. Dam Vinh Hung confirmed

this in a video posted on his Facebook page shortly thereafter, where he unequivocally admitted

that he had decided to jump onto the Fountainhead in an attempt to make a dramatic exit.

*See* **Exhibits 1 and 1A below.**



Exhibit 1: Still image from Exhibit 1 video.



9

Exhibit 1A: Still image from Exhibit 1A video.



I wanted to stand up on the fountainhead on the top to make a more beautiful Exit Out.

28.     In response to Dam Vinh Hung's statement on June 11, 2024, Plaintiff Gerard

Williams' wife stated to *Thanh Nien* on November 20, 2024, that he genuinely cherished Dam

Vinh Hung; Dam Vinh Hung was regarded as a family member, like a close brother, since they

were both born in the Year of the Pig (1971). Plaintiff even still has CD signed by Mr. Hung for

his "brother," with the note, "My best friend."



**Exhibit 2:** *The CD with singer Đàm Vĩnh Hưng's signature was shared by Mrs. Gerard Williams
with Thanh Niên. Photo: Provided by the individual (NVCC).*

29.     Plaintiff Gerard Williams' truthful statements made in response to *Thanh Nien* are

a far cry from Defendant Pham's false rumors that Plaintiffs met with media outlets to smear Dam

Vinh Hung's name. No such conduct occurred and as such, Defendant Pham's accusation was

blatantly false and slanderous.

11                          EXH. G_011

30.    Furthermore, Defendant Pham, joined by Defendant Doan, manipulated Defendant

Pham's audience during his livestream, including a caller named "Sister Trang" who repeatedly

called to slander Plaintiff Gerard Williams. Defendant Pham also persistently pressured a so-called

"Doctor Hoa" and other audience members in Canada, Australia, and various states to falsely

accuse Plaintiff Gerard Williams of defrauding Dam Vinh Hung. The aim was to allege that

Plaintiff Gerard Williams failed to report to his home insurance carrier into compensating Dam

Vinh Hung for several million dollars. Additionally, they insinuated that Plaintiff Gerard Williams

committed insurance fraud and misappropriated the proceeds. These accusations were entirely

baseless and slanderous.

31.    Below is a non-exhaustive list of the videos posted by Defendant Pham in an effort

to defame Plaintiff Gerard Williams.

**Additional Videos posted by Derek Pham:**

Exhibit 3:    Video on December 13, 2024 – "Exclusive: Đàm Vĩnh Hưng, Gerard, and
Mộng    Linh    Before    Their    Friendship    fractured."
https://www.youtube.com/watch?v=KTHhd_kWwkk

Exhibit 4:    Video on December 8, 2024 – "'Lawyer: Gerard Williams's Counter-Suing
Đàm Vĩnh Hưng Is A Waste of Time' | Perspective by Nguyễn Hoàng
Duyên"

   •    https://www.youtube.com/watch?v=nGrYGKy-9C0

Exhibit 5:    Video on December 22, 2024 – "Đàm Vĩnh Hưng Encounters A 'Die-Hard
Fan' After the Lawsuit Is 'Revived.'"

   •    https://www.youtube.com/watch?v=_41dhzoSWgs

Exhibit 6:    Video on December 23, 2024 – "Đàm Vĩnh Hưng's Close Friend Compares
Nguyễn Phương Hằng's 'Move' to That of An American Tycoon [Gerard
Williams]."

   •    https://www.youtube.com/watch?v=j0BbOrNC3kc

Exhibit 7:    Video on December 23, 2024 – "Evidence of Dũng Taylor saying 'Yellow
skin, black hair should not mess with white Americans' | #NoRacism"

   •    https://www.youtube.com/watch?v=CChDF-cqkJA

EXH. G_012

**Exhibit 8:**   Video on December 11, 2024 – "The Đàm Vĩnh Hưng Lawsuit: Audience Scrutinize Singer Bích Tuyền's [Gerard Williams's Wife]'s Words and Actions."

   • https://www.youtube.com/watch?v=X2sX5v3SV0g

**Exhibit 9:**   Video on December 12, 2024 – "LIVE: Leaked clip of Gerard Nearly Falling into a Fountain With Đàm Vĩnh Hưng."

   • https://www.youtube.com/watch?v=2634Z-4DRo4

**Exhibit 10:**   Video on December 15, 2024 – "Without the Yellow Flag, Đàm Vĩnh Hưng Still Managed to Overwhelm American Security Guards."

   • https://www.youtube.com/watch?v=SADpMz8rgJg

**Exhibit 11:**   Video on December 16, 2024 – "Shocking! Đàm Vĩnh Hưng's Lawsuit Has Been 'Revived.'"

   • https://www.youtube.com/watch?v=ATzeFMh-8KM

**Exhibit 12:**   Video on December 24, 2024 – "We Cannot Let Dũng Taylor Trample on The Vietnamese People | #NoRacism"

   • https://www.youtube.com/watch?v=_DBxnfdA-fs

**Exhibit 13:**   Video on December 25, 2024 – "Dũng Taylor Criticized By Show Promoter Liên For Trampling On The Vietnamese People | #NoRacism"

   • https://www.youtube.com/watch?v=eAybVKpLZUo

**Exhibit 14:**   Video on December 26, 2024 – "Dũng Taylor 'Harmed' Gerard [Williams]. Is it really over?"

   • https://www.youtube.com/watch?v=SS49qoSbN4Q

**Exhibit 15:**   Video on December 27, 2024 – "Đàm Vĩnh Hưng Speaks Out: 'A Good Movie Must Be Watched From The Beginning!'"

   • https://www.youtube.com/watch?v=dnC1aJAQnnw

**Exhibit 16:**   Video on December 28, 2024 – "Regarding The Đàm Vĩnh Hưng Case,  An Interview with An Insurance Expert."

   • https://www.youtube.com/watch?v=XIhleGsLpU5Q

**Exhibit 17:**   Video on December 30, 2024 – "Revealed: Đàm Vĩnh Hưng is About to Be Sabotaged."

   • https://www.youtube.com/watch?v=s7709e5LewM

EXH. G_013

**Exhibit 18:**    Video on December 31, 2024 – "Tycoon Gerard [Williams] Sues The Owner of Nửa Vòng Trái Đất TV: Derek Phạm Will Continue To Defend The Truth."

- https://www.youtube.com/watch?v=LzRIvsUF5N4

**Exhibit 19:**    Video on January 1, 2025 – "Big Reveal! Who Owns The House Where Đàm Vĩnh Hưng Fell And Broke His Leg?"

- https://www.youtube.com/watch?v=HAHMW5G7PuM

**Exhibit 20:**    Video on January 2, 2025 – "Disaster The fountain was built without a permit. Is Đàm Vĩnh Hưng Leading 1-0?"

- https://www.youtube.com/watch?v=dbxYPp-g07o

**Exhibit 21:**    Video on January 3, 2025 – "Đàm Vĩnh Hưng 'Trikes Back' With A Shocking Revelation."

- https://www.youtube.com/watch?v=IObFRpla6gQ

**Exhibit 22:**    Video on January 4,2025 – "Oh My! The Architect 'Concludes' That Đàm Vĩnh Hưng Will Win. Why?"

- https://www.youtube.com/watch?v=AbeCfmoX7fo

**Exhibit 23:**    Video on January 6, 2025 – "Big News! Gerard Withdraws His Countersuit Against Đàm Vĩnh Hưng After The Court Merges The Two Cases Into One."

- https://www.youtube.com/watch?v=JbNVC9MAL10

**Exhibit 24:**    Video on January 7, 2025 – "Dũng Taylor is 'Humiliated' as Gerard's Request Is Rejected by The Court On January 7."

- https://www.youtube.com/watch?v=1y0_4eZ0PpY&t

**Exhibit 25:**    Video on January 10, 2025 – "The Mr. Đàm Case: After the 'failure' on January 7, is the American Tycoon Trying To 'Buy Time'???"

- https://www.youtube.com/watch?v=TFYI2Zb04rY

**Exhibit 26:**    Video on January 12, 2025 – "Evidence of Dũng Taylor Lying And Maliciously Targeting Đàm Vĩnh Hưng From The Very Beginning."

- https://www.youtube.com/watch?v=Li6i6 of5l

All videos and livestreams are being supplemented and have been translated into English using AI technologies for retrieval. They are authenticated through my Declaration and incorporated herein.

EXH. G_014

2. **Defendant Pham Encourages his YouTube Viewers and Subscribers to make Threats of Violence and Murder Against Me.**

32.    In addition to the false allegations above, Defendant Pham continues to encourage

and endorse threats of violence and murder against Plaintiff through the comments made by his

viewers on his daily livestreams. For example, one user commented on Defendant Pham's

December 31, 2024 livestream to, "Just send someone to murder Gerard; why let him take up space

on this Earth?". And under the January 3, 2025 livestream, another user commented to, "Fully

back Derek Pham in the ongoing plan to murder Gerard for ruining DVH [Đàm Vĩnh Hưng] do

not let him live."



**Exhibit 27**

EXH. G_015

Case 2:25-cv-07351-JC    Document 13-4    Filed 09/04/25    Page 38 of 94    Page ID
#:490
Case 8:25-mc-00005-FWS-ADS    Document 1-10    Filed 02/25/25    Page 17 of 93    Page
ID #:440

| Translation | |
|---|---|
| Breaking News 31.12.2024<br>**Billionaire Gerard Sues the Owner of** *Nua Vong Trai Dat TV*<br>**Comments:**<br><br>Support Nua Vong Trai Dat TV by sharing the video so more people know about it. Thank you, dear readers.<br><br>**@ThaoDuong-e1m**<br><br>Support Derek Pham! Don't fear that vile and cruel billionaire. Just send someone to murder Gerard; why let him take up space on this Earth? Gerard ruined DVH [Đàm Vĩnh Hưng]'s entire singing career. | Breaking News 3.1.2025<br>**Đàm Vĩnh Hưng "Strikes Back" With A Shocking Revelation**<br>**Comments:**<br><br>**@ThaoDuong-e1m**<br><br>Support Derek Pham. Fight to the end against the cruel, hypocrite capitalist who tries to silence the voice of NVTD [Nua Vong Trai Dat TV]. Fully back Derek Pham in the ongoing plan to murder Gerard for ruining DVH [Đàm Vĩnh Hưng] do not let him live. |

33.    Plaintiff Gerard Williams should not be subjected to the daily verbal attacks and threats to him and his family's safety that accompany Defendant Pham's livestreams.

**B.    False and Malicious Internet Defamation and Harassment Comments Written by Defendant Ta.**

34.    Defendant Ta, a Vietnamese American and Houston resident, stated on Facebook that Plaintiff and his wife illegally cheated an insurance carrier and spent all the funds that should have been used to pay Dam Vinh Hung. This statement is false and not substantiated by evidence.

35.    As shown in the two comments by Defendant Ta below, Defendant Ta has commented falsehoods about Plaintiff Gerard Williams in response to Defendant Pham and Defendant Doan's posts. One comment by Defendant Ta reads, "[Plaintiff and Plaintiff's wife] scammed and cheat insurance money, spent it all, didn't let DVH [Đàm Vĩnh Hưng] claim, and even harmed him. They bought the media." And in response to Defendant Doan's Facebook Live, Defendant Ta commented, "Mr. Williams are vile, despicable, disgusting, and cowardly. [Defendant Doan] spoke well. Those people are truly cruel, thinking that with their money they could do anything." None of these comments are true. Plaintiff Gerard Williams was not

responsible for Dam Vinh Hung's accident and did not cheat his insurance carrier to allegedly avoid paying Dam Vinh Hung.

## Exhibit 28




| Translation | |
|---|---|
| **Derek Pham**<br>**Nov 23**<br>Year 2025 and the truth about Mr. Đàm's accident at the billionaire's house<br><br>**Unveiling Đàm Vĩnh Hưng's Many Chances of Winning the Lawsuit Against The Billionaire! Why? 23.11.24 Live**<br><br>**Nhu Ngoc**<br><br>The couple, singer Bích Tuyền and her husband, are truly vile and despicable. They're disgusting, vile, and cowardly, deserving everyone's contempt. They scammed and cheat insurance money, spent it all, didn't let DVH [Đàm Vĩnh Hưng] claim, and even harmed him. They bought the media. I feel so sorry for Đàm Vĩnh Hưng. | **Đoàn Thu Thương was live**<br><br>**Tiên Lê**<br><br>Bích Tuyền is despicable.<br><br>**Nhu Ngoc**<br><br>Tiên Lê, exactly! Thu Thương spoke so well, cursing them perfectly: BT [Bích Tuyền] and Mr. Williams are vile, despicable, disgusting, and cowardly. Thu Thương spoke well. Those people are truly cruel, thinking that with their money they could do anything. |

17

EXH. G_017

Case 2:25-cv-07351-JC    Document 13-4    Filed 09/04/25    Page 40 of 94    Page ID
#:492
Case 8:25-mc-00005-FWS-ADS    Document 1-10    Filed 02/25/25    Page 19 of 93    Page
ID #:442

## C. False and Malicious Internet Defamation and Cyber Harassment Campaign Conduct by Defendant Nguyen.

36.    Upon Information and belief, Defendant Pham, Defendant Doan, and their

coconspirators entered an ongoing relationship with the Texas residents, Defendants Nguyen and

Ta. Specifically, during a recent interview on *TD TV* on January 10 and January 11, 2025,

Defendant Nguyen unequivocally admitted in the interview that he had signed a Non-Disclosure

Agreement (NDA) with others concerning Plaintiff Gerard Williams's inducing Dam Vinh Hung

to dismiss the lawsuit with prejudice. In the January 10, 2025, interview, Defendant Nguyen

alleged that, as a forensic and cyber investigator and specialist (sic), he could get into people's

telephone (sic). He alleged:

> (a) Dam Vinh Hung must sue Gerard Williams' wife who is
> definitely liable, because the party where Dam Vinh Hung was
> injured was a commercial event organized for profit by the
> Williams, who allegedly sold tickets and sponsored the event
> without a permit. (This statement is false. In reality, Plaintiff
> Gerard Williams and his wife only allowed Mong Linh Nguyen
> who was a mutual friend of Dam Vinh Hung Plaintiff to use his
> residence for a Vietnamese New Year celebration. No tickets
> were issued or sold by Plaintiff Gerard Williams and his wife for
> the private party. All attendees are invited guests. The invitation
> mentioned Gerard Williams, Bich Tuyen, Duong Trieu Vu, Dinh
> Thiet, Quoc Cuong, and Huy Dien only as the singers for the
> private party. At the bottom of the invitation, it was noted: "At
> the entrance, please inform the security guard that [you wish to]
> enter the residence of Gerard Williams and Tiffany Nguyen" for
> guest verification purposes.)
>
> (b) Gerard Williams cruelly used wealth to influence Vietnamese
> media to harm Dam Vinh Hung. (Again, this statement is
> likewise untrue without being substantiated with evidence. The
> Vietnamese media follows the case because Mr. Dam Vinh
> Hung is a very famous Vietnamese singer, and Plaintiff is only
> a private citizen.)
>
> (c) Gerard Williams always refers to himself as a "billionaire" to
> defame Dam Vinh Hung by portraying Dam Vinh Hung as
> someone attempting to extort a wealthy man. (However, this
> claim is untrue. Plaintiff's name sometimes is referred to as a

EXH. G_018

EXHIBIT 5 PAGE 414

Case 2:25-cv-07351-JC    Document 13-4    Filed 09/04/25    Page 41 of 94    Page ID
#:493
Case 8:25-mc-00005-FWS-ADS    Document 1-10    Filed 02/25/25    Page 20 of 93    Page
ID #:443

"billionaire" by his technology colleagues, following the 2021
sale of his Nuvia Inc to Qualcomm for $1.4 billion and thereafter
becoming Senior Vice President of Qualcomm. In reality,
neither Plaintiff Gerard Williams nor his wife has ever referred
to ourselves as "billionaires." In fact, the couple and their seven
children lead a very simple life.

(d) Gerard Williams induced Dam Vinh Hung into dismissing the
underlying premise liability case with prejudice; and Thanh Tu
Nguyen has evidence but he could not reveal because he did sign
an NDA. (However, this claim is false.) Also, Thanh Tu
Nguyen's Declaration filed with this Court stated he never
signed any NDA.

*See* **Exhibit 29**: Video on Jan 11, 2025 – "Nguyễn Thanh Tú - 'PAVING THE WAY' for Đàm
Vĩnh Hưng vs. Gerard? *Why?*" (https://www.youtube.com/watch?v=1ob2Q1PZ3d0)

*See* **Exhibit 51**: Video Jan 10, 2025 – "Nguyễn Thanh Tú: Đàm Vĩnh Hưng 'Definitely Wins.'
Why?" ( https://www.youtube.com/watch?v=DCK4aXjvkHE)

*See* **Exhibit 52:** Video Jan 4, 2025 – "Mr. Nguyễn Thanh Tú: New Details In The Đàm Vĩnh Hưng
-Gerard Case Cause A 'Shift In The Wind.'" (https://www.youtube.com/watch?v=7pxsbyz2hjU)

37.    Defendant Nguyen also actively participated in platforms associated with the

coconspirator Mai Tien Dung, including TD Media's YouTube channel and other platforms,

thereby <u>directly</u> engaging in coordinated efforts with Dam Vinh Hung, Defendant Pham, and

Defendant Doan to defame Plaintiff Gerard Williams and his wife.

### D. False and Malicious Internet Defamation and Cyber Harassment Campaign Conduct by Defendant Doan.

38.    Since December 2024, Defendant Doan has published defamatory statements about

Plaintiff and his wife. Her YouTube alone has over 149,000 subscribers and a total viewership

count of over 16 million. Moreover, she is an avid user of Facebook Live, amassing thousands of

viewers and attracting multiples shares and comments. Through these posts, she has actively

interacted and encouraged her viewers and followers, including forum Defendant Ta, to disparage

Plaintiff Gerard Williams and his wife, jeopardizing his safety and endangering his life.

EXH. G_019

EXHIBIT 5 PAGE 415

# Exhibit "H"

CAUSE NO. 1242113

| | | |
|---|---|---|
| GERARD RICHARD WILLIAMS III | § | IN THE COUNTY CIVIL COURT |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | AT LAW NO. 1 |
| | § | |
| DAI DUONG PHAM (A/K/A DEREK PHAM), | § | |
| THU THUONG DOAN, TU NGUYEN, | § | |
| (A/K/A THANH TU NGUYEN) and NHU TA, | § | |
| *Defendants.* | § | HARRIS COUNTY, TEXAS |

---

## DECLARATION OF GERARD RICHARD WILLIAMS III IN SUPPORT OF HIS RESPONSE TO THE TCPA/ANTI-SLAPP MOTIONS FILED BY DEFENDANTS DAI DUONG PHAM AND THANH TU NGUYEN

1.  My name is GERARD RICHARD WILLIAMS III. I am over the age of 18 years and have personal knowledge of the facts stated in this Declaration. I am competent to give the testimony contained in this Declaration in support of my Response to Defendants Pham's and Nguyen's TCPA motions and swear that the statements contained in this Declaration are true and correct and within my personal knowledge.

2.  Attached for the Court's convenience are true and correct copies of Ex. 27A, Ex.27B; Dai Duong Pham (A/K/A "Derek Pham")'s Video Excerpts Transcripts Ex. 9, Ex. 19, Ex. 20, Ex. 21, Ex. 22, Ex. 23, Ex. 24, Ex. 25; and Thanh Tu Nguyen Video Transcripts Ex. 29 and Ex. 52. These Exhibits have been admitted into evidence and incorporated by reference into this Declaration and attached hereto.

3.  This case arises from Defendants' deliberate and egregious campaign of daily internet defamation and criminal cyber harassment aimed at spreading misinformation to the over 300,000 Vietnamese American residents in Texas (including more than 150,000 residents in Houston alone) [1] in order to incite hysteria and potential violence against my family and me.

---

[1] The Greater Houston area is home to the second-largest Vietnamese population in the country, with approximately 143,000 people, according to 2019 numbers from the Pew Research Center. https://abc13.com/vietnamese-vietnam-war-refugees-immigrants/11913968/; https://www.pewresearch.org/chart/top-10-u-s-metropolitan-areas-by-vietnamese-population-2019/. As of 2023, approximately 2.4 million Vietnamese Americans reside in the United States, with Texas being home to about 14% of this population. This equates to roughly 336,000 Vietnamese Americans in Texas. https://en.wikipedia.org/wiki/Vietnamese_Americans?utm_source=chatgpt.com

EXH. H_001

4.      Since at least November 2024, Defendants Pham's and Nguyen's have undertaken a targeted defamation and harassment campaign on their YouTube channels and Facebook pages and livestreams against my family and me.

5.      The defamatory statements were disseminated through Defendants' video content using YouTube platform. Since November 2024, Defendants Pham and Nguyen have repeatedly discussed with their guest speakers as well as encouraging and endorsing the defamatory statements of their viewers on their livestreams. The topic involved the premise liability litigation between Dam Vinh Hung, a famous Vietnamese singer ("**Dam Vinh Hung**") and me.

6.      On information and belief, Defendants are working jointly as fans, friends, relatives, and/or paid Youtubers and/or Facebook commentators with whom Dam Vinh Hung has a close relationship. They include:

> Defendant Tu Nguyen (a/k/a Thanh Tu Nguyen) ("**Nguyen**");
> Defendant Nhu Ta ("**Ta**");
> Defendant Dai Duong Pham (a/k/a Derek Pham) ("**Pham**"); and
> Defendant Thu Thuong Doan ("**Doan**").

7.      Defendants' smear campaign stems from my former lawsuit with Dam Vinh Hung. The lawsuit was based on a self-inflicted injury that Dam Vinh Hung sustained when performing for Mong Linh Nguyen, who was granted the right to use my residence on February 19, 2024. Dam Vinh Hung sought from $20,000,000 to $50,000,000 in damages against me. But Dam Vinh Hung voluntarily dismissed the lawsuit with prejudice on December 2, 2024.[2]

8.       Despite the dismissal, Defendants continue in their coordinated efforts to tarnish the reputation of my wife, my family, and me through inflammatory posts and online interviews.

9.      These posts, interviews and comments promulgated by Pham and Nguyen are toxic, untrue, and in some instances, extremely threatening and alarming. As set forth herein, these Defendants have encouraged their fans to contact my family in order to coerce me into paying Dam Vinh Hung millions of dollars. Defendant Pham provided viewers with my home address and information about my wife and my family. Defendants' viewers, subscribers and commentators have called my wife and me terrible, derogatory terms. Some of them have even made death threats and called for me to be murdered, causing me to fear for my family's lives and my life. *See* Plaintiff's Exhibit 27A and 27B which were admitted and has been on filed with the Court. And in each instance, Defendants took no action to discourage their viewers, subscribers, or commentators from making such comments.

---

[2] Although Dam Vinh Hung initially dismissed the premises liability action against me with prejudice on December 2, 2024, he reversed his position fourteen (14) days later. Both parties are now awaiting the trial court's decision on whether to adhere to California Supreme Court precedent, which establishes that a request for dismissal with prejudice is legally irreversible once filed.

EXH. H_002

10.     These statements go far beyond protected free speech. The slanderous, libelous, and violent statements published, encouraged, endorsed by Pham and Nguyen have caused significant harm to my reputation and that of my wife, exposing us to public hatred, contempt, ridicule, financial damage, and fear for our lives.

11.     Defendants Pham and Nguyen intentionally targeted and interacted with residents of Texas, particularly those in Harris County. Since December 2024, Defendant Pham has appeared nightly on his YouTube channel, *Nua Vong Trai Dat*, alongside guests such as guest speaker, Ngo Ky. Additionally, Mr. Mai Tien Dung of TD TV, a close associate of Dam Vinh Hung, invited Defendant Nguyen to his livestream broadcasts on January 10, 2025, and January 11, 2025. During these livestreams, these non-resident Defendants interacted with Texas and Harris County viewers and subscribers, encouraging and endorsing slanderous statements against me.

   A. **False and Malicious Internet Defamation and Cyber Harassment Conducted by Defendant Pham.**

      1. **Defamatory Smear Campaign on Defendant Pham's YouTube Livestream**

12.     On December 12, 2024, December 13, 2024, and every day thereafter, Defendants Pham conspired with Defendants Nguyen, orchestrated a defamatory smear campaign through Defendant Pham's YouTube livestream channel *Nua Vong Trai Dat TV* (https://www.youtube.com/channel/UCfl_G9BwH-DhtNn-y0q_7aA), and TDTV media.[3] *See* Paragraph 2.

13.     Each video targeted my wife and me. Each session lasted two to three and a half hours and invited and encouraged listeners, commentators, and subscribers—particularly those in Texas and Harris County— and other places to interact by calling in, verbally commenting, or leaving messages about my dismissed lawsuit with Dam Vinh Hung.

14.     The alarming content in the smear campaign has escalated significantly over the last three months. For example, during the livestream on December 12, 2024, a caller using a phone number allegedly contacted Defendant Pham. During the livestreamed call, Defendant Pham repeatedly invited the "Caller" to return to the livestream, and further encouraged and incited him and endorsed his "unique" idea to wear a billboard and stage a protest outside Qualcomm in San Diego (where I presently serve as a Senior Vice President of Engineering). The protest was to allegedly demand "Justice for Dam Vinh Hung, who lost three toes at Gerard Williams' home without compensation" due to Gerard Williams' negligence, cruelty, lying, coercion, inducement, and misappropriation of the insurance proceeds which belong to Dam Vinh Hung." Defendant Pham endorsed the viewers idea to report my alleged illegal activities to the District Attorney's Offices in San Diego and in Orange County. This is outrageous.

15.     None of us traveled to Vietnam and at no time have I made any comment to any media outlets <u>in</u> Vietnam (in the Socialist Republic of Vietnam) about my dispute with Dam Vinh

---

[3] See Plaintiff's Exhibit 29 and Exhibit 52.

EXH. H_003

Hung. My wife did make a response to one outlet, but this comment was truthful and based on statements made in Dam Vinh Hung's public complaint.

16. In a statement made by Dam Vinh Hung to *Thanh Nien* on June 11, 2024, he alleged: "On February 19, 2024, Mr. Gerard Richard Williams III misused a concrete fountain by turning it into a stage and a table for beverages during a party. This caused the fountain to topple and fall, injuring singer Đàm Vĩnh Hưng's foot."

17. This statement is patently false. The accident was not my fault at all. Dam Vinh Hung's injury was a self-inflicted product of his own negligence. Dam Vinh Hung confirmed this in a video posted on his Facebook page shortly thereafter, where he unequivocally admitted that he had decided to jump onto a fountain in an attempt to make a dramatic exit.

*See* **Exhibits 1 and 1A below.**



*Exhibit 1: Still image from Exhibit 1 video.*



EXH. H_004

*Exhibit 1A: Still image from Exhibit 1A video.*



5

EXH. H_005

**Additional Videos posted by Derek Pham:**

**Exhibit 9:**  Video on December 12, 2024 – "LIVE: Leaked clip of Gerard Nearly Falling into a Fountain With Đàm Vĩnh Hưng."

- https://www.youtube.com/watch?v=2634Z-4DRo4

**Exhibit 19:**  Video on January 1, 2025 – "Big Reveal! Who Owns The House Where Đàm Vĩnh Hưng Fell And Broke His Leg?"

- https://www.youtube.com/watch?v=HAHMW5G7PuM

**Exhibit 20:**  Video on January 2, 2025 – "Disaster The fountain was built without a permit. Is Đàm Vĩnh Hưng Leading 1-0?"

- https://www.youtube.com/watch?v=dbxYPp-g07o

**Exhibit 21:**  Video on January 3, 2025 – "Đàm Vĩnh Hưng 'Trikes Back' With A Shocking Revelation."

- https://www.youtube.com/watch?v=IObFRpla6gQ

**Exhibit 22:**  Video on January 4,2025 – "Oh My! The Architect 'Concludes' That Đàm Vĩnh Hưng Will Win. Why?"

- https://www.youtube.com/watch?v=AbeCfmoX7fo

**Exhibit 23:**  Video on January 6, 2025 – "Big News! Gerard Withdraws His Countersuit Against Đàm Vĩnh Hưng After The Court Merges The Two Cases Into One."

- https://www.youtube.com/watch?v=JbNVC9MALl0

**Exhibit 24:**  Video on January 7, 2025 – "Dũng Taylor is 'Humiliated' as Gerard's Request Is Rejected by The Court On January 7."

- https://www.youtube.com/watch?v=1y0_4eZ0PpY&t

**Exhibit 25:**  Video on January 10, 2025 – "The Mr. Đàm Case: After the 'failure' on January 7, is the American Tycoon Trying To 'Buy Time'???"

- https://www.youtube.com/watch?v=TFYI2Zb04rY

All videos and livestream, transcripts, and certificates of translation have been admitted and are on file and contained in the Court's online Images.

**2.  Defendant Pham Encourages his YouTube Viewers and Subscribers to make Threats of Violence and Murder Against Me.**

22. In addition to the false allegations above, Defendant Pham continues to encourage and endorse threats of violence and murder against me through the comments made by his viewers on his daily livestreams. For example, one user commented on

EXH. H_006

Defendant Pham's December 31, 2024 livestream to, "Just send someone to murder Gerard; why let him take up space on this Earth?". And under the January 3, 2025, livestream, another user commented to, "Fully back Derek Pham in the ongoing plan to murder Gerard for ruining DVH [Đàm Vĩnh Hưng] do not let him live."



*Exhibit 27*

| Translation | |
|---|---|
| **Breaking News 31.12.2024** **Billionaire Gerard Sues the Owner of *Nua Vong Trai Dat TV*** Comments: | **Breaking News 3.1.2025** **Đàm Vĩnh Hưng "Strikes Back" With A Shocking Revelation** Comments: |
| Support Nua Vong Trai Dat TV by sharing the video so more people know about it. Thank you, dear readers. **@ThaoDuong-e1m** | **@ThaoDuong-e1m** Support Derek Pham. Fight to the end against the cruel, hypocrite capitalist who tries to silence the voice of NVTD [Nua Vong Trai Dat TV]. Fully back Derek Pham in the ongoing plan to murder |

7

EXH. H_007

| | |
|---|---|
| Support Derek Pham! Don't fear that vile and cruel billionaire. Just send someone to murder Gerard; why let him take up space on this Earth? Gerard ruined DVH [Đàm Vĩnh Hưng]'s entire singing career. | Gerard for ruining DVH [Đàm Vĩnh Hưng] do not let him live. |

18.    I should not be subjected to the daily verbal attacks and threats to my family's and my safety that accompany Defendant Pham's livestreams.

**B. False and Malicious Internet Defamation and Cyber Harassment Campaign Conduct by Defendant Nguyen.**

19.    Upon Information and belief, Defendant Pham, Defendant Nguyen, and their coconspirators entered an ongoing relationship to conspire with each other and Dam Vinh Hung. Specifically, during a recent interview on Pho Bolsa TV on January 10 and January 13, 2025, Defendant Nguyen unequivocally admitted that he <u>had signed a Non-Disclosure Agreement (NDA) with others</u> concerning my alleged inducement to Dam Vinh Hung to dismiss the lawsuit with prejudice.  In the January 10, 2025, interview, Defendant Nguyen alleged that, as a forensic and cyber investigator and specialist (sic), he could get into people's telephone (sic). He alleged:

(a) <u>Gerard Williams is definitely liable,</u> because the party where Dam Vinh Hung was injured was a commercial event organized for profit by the Williams, who allegedly sold tickets and sponsored the event without a permit. (This statement is false. In reality, my wife and I only allowed Mong Linh Nguyen who was a mutual friend of Dam Vinh Hung to use my residence for a Vietnamese New Year celebration. No tickets were issued or sold by my wife and me for such private party. All attendees are invited guests. The invitation mentioned Gerard Williams, Bich Tuyen, Duong Trieu Vu, Dinh Thiet, Quoc Cuong, and Huy Dien only as the singers for the private party. At the bottom of the invitation, it was noted: "At the entrance, please inform the security guard that [you wish to] enter the residence of Gerard Williams and Tiffany Nguyen" for guest verification purposes. The reason is that it was a private party, and my residence was located in an exclusive premises and the security guard at the gate needed to contact my wife and/or me for verification.

(b) <u>Gerard Williams cruelly used wealth to influence Vietnamese media to harm Dam Vinh Hung</u>. (Again, this statement is likewise untrue without being substantiated with evidence. The Vietnamese media follows the case because Mr. Dam Vinh Hung is a very famous Vietnamese singer, known as the "King of Vietnamese Pop," and I am only a private citizen.)

(c) Gerard Williams induced Dam Vinh Hung into dismissing the underlying premises liability case with prejudice; and Thanh Tu Nguyen has evidence that he could not reveal because he signed an NDA. (However, this claim is false. Pham and Nguyen's coconspirator (Defendant Doan) admitted that she was the

EXH. H_008

one who convinced DVH to settle.)(*See* Paragraph 28 and Ex. 30). Also, Thanh Tu Nguyen's Declaration filed with this Court lied that he never signed any NDA.

*See* **Exhibit 29**: "Nguyễn Thanh Tú - 'PAVING THE WAY' for Đàm Vĩnh Hưng vs. Gerard? *Why?*" (https://www.youtube.com/watch?v=lob2Q1PZ3d0)

*See* **Exhibit 51**: Video Jan 10, 2025 – "Nguyễn Thanh Tú: Đàm Vĩnh Hưng 'Definitely Wins.' Why*?"* ( https://www.youtube.com/watch?v=DCK4aXjvkHE)

*See* **Exhibit 52:** Video Jan 4, 2025 – "Mr. Nguyễn Thanh Tú: New Details In The Đàm Vĩnh Hưng -Gerard Case Cause A 'Shift In The Wind.'" (https://www.youtube.com/watch?v=7pvsbyz2hjU)

20.    Defendant Nguyen also actively participated on platforms associated with the coconspirator Mai Tien Dung, including TD Media's YouTube channel and other platforms, thereby <u>directly</u> engaging in coordinated efforts with Dam Vinh Hung, Defendant Pham, and Defendant Doan to defame my wife and me.

21.    **Exhibit 30: Pham's and Nguyen's malice is shown as they knew that that on December 11, 2024, Thu Thuong Doan admitted that "**I was one of the people persistently urging him, saying, 'Please, please, I beg you, withdraw the lawsuit.' So yes, I did push for it. That's the truth, and I also talked about it online."

22.    For example, on December 11, 2024, Defendant Thu Thuong Doan appeared on a YouTube video unequivocally admitting her very close relationship with Dam Vinh Hung and that she was a key person persistently advising him to dismiss the premises liability lawsuit against Gerard Williams.



23.    **In Exhibit 30**, YouTuber Nguyen Tien Dung asked: "Do you know the reason why Đàm Vĩnh Hưng withdrew the lawsuit? Some people say it's because he saw he was going to lose, so he withdrew. Others say his lawyer advised him to do so. Some claim there must have been external pressure that coerced him to withdraw. So, in your opinion, what is the real reason?"

EXH. H_009

24.     At **45:22**, Đoàn Thu Thương said: "Yes, I'm speaking sincerely now. I said, "Anh Hưng
[Đàm Vĩnh Hưng], I beg you, please withdraw the lawsuit." Yes, honestly, I really meant
it. I also said, "Just drop it, let it all go, just withdraw the lawsuit. Please, I beg you, just
withdraw it." Basically, people kept pushing him—his siblings, sister, and friends—also
pressured him to drop the lawsuit, and I was one of the people persistently urging him,
saying, "Please, please, I beg you, withdraw the lawsuit." So yes, I did push for it. That's
the truth, and I also talked about it online."

### C.   Defendants are Believed to be Conspiring Together Against Me.

25.     Upon information and belief, the campaign of false statements, smears and threats and
encouragement of violence directed at me and my family started in December 2024.

26.     This campaign goes beyond the creation of content defaming me. The smear campaign
against me is also being perpetuated by the use of clickbait titles, comments, likes, and
other interactions Defendants engage in to spin the narrative of Dam Vinh Hung's
accident. As previously mentioned, Defendant Nguyen appeared on Defendant TDTV's
livestream  of Mai Tien Dung unequivocally admitting the signing of an NDA concerning
the allegation that I induced Dam Vinh Hung to dismiss the lawsuit with prejudice.
Similarly, Defendant Nguyen interacted with and republished Defendant Pham's content,
pushing the false narrative that I influenced the media in Vietnam and in the U.S. with my
money, and cheated on my insurance carrier. Defendants Pham and Nguyen, with their
coconspirators, made these statements knowing that such statements would be repeated to
and by others. These statements continue to be repeated and reposted throughout Facebook
and other social media, to the injury of my family and me. On information and belief, they
have received tens of thousands of viewers endorsing them.

27.     As set forth below, Defendants Pham and Nguyen should not be able to hide behind what
they claim to be "mere opinion." To this day, Defendants cannot and have not proved that
the statements about my wife and me are true. They produced zero evidence except hearsay
links which were mostly created in Vietnam because Dam Vinh Hung is the "King of
Vietnamese Music."

28.     Defendants published defamatory statements online through social media platforms,
YouTube and Facebook, to defame me.

29.     Further, Defendants' statements involve a matter of private concern since I am not a general
public figure or limited public figure.

        *See* PLAINTIFF'S DEFAMATION - CHART NO. 1

30.     The following are defamatory statements *made by* Defendants' guest speakers and/or
viewers. These false statements were encouraged and *endorsed* by Defendants against me.

10

31.     These statements falsely accuse me of committing serious crimes. Additionally, they
        injured my reputation, and exposed me to public hatred, contempt, or ridicule. They also
        impaired my honesty, integrity, virtue, or reputation.

        a.   Gerard Williams is a "dishonest, deceitful, inhuman insurance fraudster,
        Satan, and/or a devil."

        b.   Gerard Williams is a person who "engaged in illegal activities by defrauding
        the insurance carrier and misusing insurance proceeds by not paying Dam
        Vinh Hung."

        c.   Gerard Williams is a "scammer as he induced Dam Vinh Hung into
        dismissing the lawsuit."

*See also* PLAINTIFF'S DEFAMATION - CHART NO. 1

32.     Furthermore, in an effort to coerce me into paying Dam Vinh Hung, Defendants
        encouraged and endorsed defamatory statements made by their speakers and viewers,
        which they published on their social media channels, thereby tarnishing my reputation

33.     These statements are false, offensive, deeply hurtful, and blatantly dehumanizing.

*See also* PLAINTIFF'S INJURY AND MENTAL ANGUISH

34.     These intrusions are highly offensive to any reasonable person. Defendants, who are
        *strangers* to me, continue to post information that exposes my loved ones and me to
        possible harm from those involved in the smear campaign against me. As a result of
        Defendants' actions, I have lived in fear of the death threats I have received.

35.     Defendant's wrongful acts caused injury to me, including mental anguish, public
        humiliation and shame for alleged actions (that I have not committed) and defamatory
        statements that are patently untrue.

36.     I respectfully seek damages within the jurisdictional limits of this Court.

37.     Defendants' conduct in spreading defamatory statements against me was reckless. In
        particular, Defendants Nguyen and Pham knew that these defamatory statements would
        incite their subscribers and/or viewers to harass me. Advancing and endorsing the
        defamatory statements against me, Defendants deliberately refused to remove or censor
        comments calling for violence and death threats against me.

38.     Recently, upon learning that their friend and idol's case was likely either to be dismissed
        with prejudice on July 7, 2025, or prolonged in the appellate courts, Defendants changed
        their strategy to extort my wife and me by threatening to kill me.

39.     Defendants Pham and Nguyen, and their co-conspirators encouraged and endorsed
        statements made by commentators, including:

EXH. H_011

a) **"Support Derek Pham. Fight to the end against the cruel, hypocrite capitalist who tries to silence the voice of NVTD [Nửa Vòng Trái Đất TV]. Fully back Derek Pham <u>in murdering Gerard</u> for ruining DVH [Đàm Vĩnh Hưng]. Do not let him survive."**

b) "Support Derek Pham! Don't fear that vile and cruel billionaire. <u>Just send someone to murder Gerard; why let him take up space on this Earth</u>? Gerard ruined DVH [Đàm Vĩnh Hưng]'s entire singing career."

40. Some fans explicitly posted on Defendant Pham's Facebook page, advocating for **Gerard being "murdered."** Despite these alarmingly violent threats, Defendant Pham took no action to discourage his fans or commentators from making or sharing such comments.

*See* **PLAINTIFF'S DEATH THREATS - CHART NO. 2**

41. I have established a prima facie case for defamation by showing:

a. Both Defendants have made false statements of fact to a third party;

b. The statement was defamatory concerning me, Gerard Williams;

c. Both Defendants acted negligently (for private individuals) or with actual malice (for public figures);

d. The statement caused damages, in addition to many statements constituting defamation per se.

**Element 1: Defendants Made False Statements to Third Parties.**

42. The record shows that Pham and Nguyen repeatedly made false claims about me, implying that I committed insurance fraud, manipulated the media in Vietnam by making them call me as Billionaire, and accused DVH of criminal conduct. These were presented as fact in online broadcasts.

**Element 2: The Statements Were Defamatory.**

43. 45. Defendants acused me of committing insurance fraud, defaming Dam Vinh Hung as committing sham marriage, and tax evasion constitute defamation per se. These statements attack my character and professional integrity, alleging criminal conduct. They are not mere opinions—they are provably false and harmful.

**Element 3: Defendants Acted with Negligence or Actual Malice.**

44. As a private citizen, I need only show negligence. Negligence means failing to investigate the truth before publishing. Pham and Nguyen made no effort to verify their claims. They never contacted me or checked facts with credible sources. their satements reflect reckless disregard for truth and personal malice.

12

EXH. H_012

**Element 4: Damages Are Presumed and Proven.**

45.     Because the statements are defamatory per se, damages are presumed. Still, I have shown actual harm: being labeled a "cheater," "scammer," and "Satan," facing threats, and experiencing reputational loss. (Declaration).

46.     I have lost friendships, canceled events, and now require increased security. These are direct and foreseeable consequences of Defendants' malicious conduct toward me.

47.     Thus, the TCPA motions of both Defendants must be denied because the statements do not involve a public concern and because I have established a prima facie defamation case.

### D.  I am Neither a General-Purpose Nor a Limited-Purpose Public Figure.

**1) The Legal Burden to Prove Public Figure Status Is High.**

48.     Texas law recognizes two types of public figures: general-purpose and limited-purpose. General-purpose public figures are individuals with "pervasive fame or notoriety" who are public figures "for all purposes and in all contexts." *There is no evidence that I am a* general-purpose public figure.

        a.   A limited-purpose public figure is someone who voluntarily injects themselves into a particular public controversy to influence its outcome. To qualify, the defendant must prove:

        b.   There was a public controversy. The dispute between Dam Vinh is not a matter of public controversy.

        c.   I do not have any role in in it; and

        d.   The defamatory statements such as I am a scammer and my wife is a prostitute are not germane to my participation.

49.     My understanding is to meet the first prong, *the controversy must be truly "public"— discussed by others beyond the immediate participants and capable of affecting third parties in a meaningful way*.

50.     For the second prong, I must have stepped vol I  have not done so. untarily into the spotlight, sought publicity, and engaged with the media to influence the controversy.

51.     To meet the third prong, Defendants defamatory statement must directly relate to my role in the alleged controversy. This prong test is not applicable.

**2) Defendants Have Failed to Prove I am a Public Figure.**

52.     I am not a public figure. While I am a successful technologist, that alone does not elevate me to public figure status. I live a private life with my wife and daughter and have never sought public office or prominence in the Vietnamese-American community.

EXH. H_013

> My wife and I hang out quite a lot. We want to engage with our kids,
> family, and friends... I just don't want to expose myself outside.

(Williams v. Pham et al., No. 1242113, Reporter's R. at 72:2–7 (Cnty. Civ. Ct. at Law No. 1,
Harris Cnty., Tex. Feb. 20, 2025).)

> I'm a very personal... I live a private life. I've always lived that way.

(*Id.* at 76:20–21).

53.    Our family's missionary and charitable contributions have been deliberately low-profile
and largely anonymous.

54.    Defendants have presented no evidence showing I am a general-purpose or limited-purpose
public figure. Two interviews on "Pho Bolsa TV" do not meet the legal threshold. Nor does
media coverage of

55.    There is no evidence that the statements relate to Gerard's participation in any legitimate
controversy. Defendants dragged me into a manufactured drama; I did not participate
voluntarily.

56.    I pray that the Court deny Defendant Pham's and Defendant Nguyen's TCPA/Anti-SLAAP
Motion as 90 days have passed since Nguyen filed his TCPA/Anti-SLAAP Motion; and 60
days have passed since Pham filed his TCPA/Anti-SLAAP Motion. Furthermore, Pham
failed to give me the required 21 days notice before the May 14, 2025, hearing.

57.    Furthermore, allowing Defendants' false and defamatory posts and comments about my
wife and I to remain on Defendants' YouTube and/or Facebook pages is tantamount to
allowing Defendants to have these false and defamatory statements reposted and repeated
about my wife and me.

58.    My name is Gerard Richard Williams III, my date of birth is July 29, 1971, and my address
is 4 Shoreview Dr., Newport Coast, CA 92657. I declare under penalty of perjury that the
foregoing is true and correct.

Executed in Orange County, State of California on May 12, 2025.

**GERARD RICHARD WILLIAMS III**

14

# Exhibit "I"

1  QUINN EMANUEL URQUHART & SULLIVAN LLP
     Claude M. Stern (Bar No. 96737)
2    claudestern@quinnemanuel.com
   555 Twin Dolphin Dr., 5th Floor
3  Redwood Shores, California 94065
   Telephone:    (650) 801-5000
4  Facsimile:    (650) 801-5100

5  QUINN EMANUEL URQUHART & SULLIVAN LLP
     David Eiseman (Bar No. 114758)
6    davideiseman@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, CA 94111
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for Defendant
   Gerard Williams III

10

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 2/13/2020 8:51 PM
Reviewed By: M Vu
Case #19CV352866
Envelope: 4029622**

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                        COUNTY OF SANTA CLARA

13  APPLE INC.,                          CASE NO. 19-CV-352866

14              Plaintiff,               **DEFENDANT WILLIAMS' CROSS-
                                         COMPLAINT AGAINST APPLE INC.
15        v.                             FOR DECLARATORY RELIEF (CAL.
                                         CIV. PROC. CODE § 1060)**
16  GERARD WILLIAMS III,

17              Defendant.               Action Filed:    August 7, 2019
                                         Judge:           Hon. Thang N. Barrett
18                                       Department:      21

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Under California Code of Civil Procedure section 428.10, Cross-Complainant Gerard Williams III ("Williams") brings the following Cross-Complaint against Cross-Defendant Apple Inc. ("Apple"), as follows:

**NATURE OF THE ACTION**

1.      This is a Cross-Complaint to prevent Apple from attempting to stifle employee mobility and innovation under the guise of claims for breach of contract and breach of the duty of loyalty.

2.      Desperate to defend itself from the loss of a key engineer—and to deter other employees from daring to leave Apple to pursue their own innovative ventures—Apple claims that the Intellectual Property Agreement ("IPA") to which it contends Williams agreed at the outset of his employment at Apple obligates Williams to assign to Apple the mere idea for a new company, without the creation of any patentable or copyrightable invention, or use of Apple's trade secrets.

3.      California law provides robust protections for employee mobility and innovation, including by protecting employees' right to make preparations to form a new—and even competitive—business prior to resigning from their current employer.

4.      Accordingly, Williams brings this action seeking a declaratory judgment that the assignment provision of Apple's IPA is void as against California law and policy and, as a result, that Apple's attempts to enforce that provision against Williams are void.

5.      Apple should not be permitted to use a breach of contract action, seeking to enforce an invalid contractual provision, as an end-run around California's protections of employee mobility and innovation.  Indeed, Apple's actions not only violate the laws and public policy of the State of California but also undermine the free and open competition that has made the state the birthplace of countless innovative businesses.

## THE PARTIES

6.      Cross-Complainant Williams is a resident of Los Altos, California.

7.      Cross-Defendant Apple is a California corporation with its principal place of business in Cupertino, California.

## JURISDICTION AND VENUE

8.      Jurisdiction of this Court is founded upon California Code of Civil Procedure section 410.10.

9.      Venue is proper in Santa Clara County pursuant to California Code of Civil Procedure section 395.5.

10.     The events, acts, and omissions giving rise to this Cross-Complaint occurred in substantial part in the County of Santa Clara, California.

11.     This Cross-Complaint arises out of the same underlying facts as those alleged and at issue in Apple's Complaint, filed on August 7, 2019 ("Complaint"), in this case.

12.     An immediate, real, and justiciable controversy exists between Williams and Apple as to whether Williams breached the IPA between Williams and Apple, including whether that contract is valid, whether that contract is enforceable, and whether that contract has been breached.

## FIRST CAUSE OF ACTION

(For Declaratory Relief, Cal. Civ. Proc. Code §§ 1060 et. seq.)
(Declaration of Invalidity of Section 1.0 of Intellectual Property Agreement)

13.     Williams restates all allegations in the preceding paragraphs as though fully set forth in this paragraph.

14.     Apple claims that a valid and enforceable contract (the IPA) exists between it and Williams in connection with his employment at Apple.  (*See* Complaint, ¶¶ 17-22.)

15.     Apple accuses Williams of breaching the IPA by allegedly "plann[ing] and develop[ing] a business called NuVia" and "fail[ing] to disclose and assign [] inventions to Apple."  (*Id.*, ¶¶ 46, 49.)

16.     Nowhere in its Complaint, however, does Apple allege that Williams invented anything.  Rather, Apple premises its breach of contract claim on Williams' alleged failure to disclose "an idea for a 'business to develop computer chips for servers.'"   (Opposition to Williams' Demurrer and Motion to Strike at 15 (citation omitted)).

17.     Apple contends that, as a condition of his employment, Williams was required to sign the IPA.  (Complaint, ¶ 18.)

18.     The IPA contains a provision titled "Apple's Rights in Inventions."  That provision, in relevant part, requires Apple employees to assign to Apple

> "all Inventions that (a) are developed using the equipment, supplies, facilities, or Proprietary Information of Apple or its subsidiaries; or (b) result from or are suggested by work performed by you for Apple or its subsidiaries; or (c) are conceived or reduced to practice during your employment by Apple and relate to the business and products, or to the actual or demonstrably anticipated research or development of Apple or its subsidiaries."

(Complaint, Ex. A, ¶ 1.0(b).)

19.     The IPA defines "Inventions," in relevant part, as "any and all inventions, ideas, and discoveries . . . made, created, conceived, or reduced to practice by you, whether alone or jointly with others."  (*Id.*, ¶ 1.0.)

20.     Under Section 16600 of the California Business and Professions Code, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Section 16600's sweep is broad; it "represents a strong public policy of the state" in favor of employee mobility and bars even narrow restraints on trade or profession. *Edwards v. Arthur Andersen LLP* (2008) 44 Cal. 4th 937, 949, 955.

21.     The IPA's invention assignment provision, as Apple interprets it, restrains Williams from "engaging in a lawful profession, trade, or business" to the extent that it required him to disclose his alleged idea for a business.

22.     On information and belief, Apple's interpretation of the invention assignment provision also serves as a deterrent to other employees with innovative business ideas and obstructs those employees from leaving Apple to pursue those business ideas.  Indeed, Apple has a history of acting illegally to prevent employees from leaving Apple's employment.  On March 17,

2011, in an action brought against it by the U.S. Department of Justice, Apple stipulated to a final judgment that barred Apple from, among other things, "pressuring any person in any way to refrain from soliciting, cold calling, recruiting, or otherwise competing for employees" of its industry competitors.  *See* Final Judgment, *United States v. Adobe Sys., Inc. et al.*, Case No. 1:10-cv-01629-RBW (D.D.C. Mar. 18, 2011).   Apple's sweeping—and illegal—reading of the invention assignment provision in the IPA is a further attempt to hinder employee mobility.

23.    California has a "strong public policy," as expressed in Section 16600, "of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice." *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.* (2018) 28 Cal. App. 5th 923, 935 (quoting *Dowell v. Biosense Webster, Inc.* (2009) 179 Cal. App. 4th 564, 575) (internal quotation marks omitted).  Indeed, Section 16600 codifies "a settled legislative policy in favor of open competition and employee mobility."  *Id.*  This Cross-Complaint aims to effectuate that policy in the public interest by establishing that employers cannot claim entitlement to possession of their employees' ideas when those ideas do not involve the creation of any patentable or copyrightable inventions or any use of the employer's trade secrets.

24.    Moreover, on information and belief, contract clauses like the invention assignment provision in Williams' IPA are present in contracts between Apple and other employees, as well as in employment contracts at myriad other companies.  Impermissibly broad invention assignment provisions not only inhibit employee mobility in a variety of industries but also impair the public interest by depriving the public of innovative products and solutions that might otherwise be pursued.

25.    Thus, the IPA is void and unenforceable at least to the extent that it purports to require assignment of the idea of a new or competitive company when that idea does not involve the creation of any patentable or copyrightable inventions or any use of the employer's trade secrets.

26.    Apple contends that the IPA's contractual restraint of trade is legal, enforceable, and has been breached by Williams.  (Complaint, ¶¶ 42-51.)

27.     Indeed, Apple continues to maintain its breach of contract claim against Williams and in doing so has caused, and continues to cause, harm to Williams.  Such harm includes monetary and/or personal harm, both compensable and irreparable, including harm to reputation, and/or expenditure of substantial time and resources defending this litigation rather than devoting his time and resources to furthering his own career and the success of his new company.

28.     Williams in good faith believes that the contractual restraint of trade Apple purports to impose on Williams under the IPA is void.

29.     An actual controversy thus exists as to the legality and enforceability of the contractual restraint of trade in the IPA, at least to the extent the IPA purports to require assignment of an idea for a new or competitive company when that idea does not involve the creation of any patentable or copyrightable inventions or any use of the employer's trade secrets.

30.     Williams thus has an immediate need for declaratory relief to preserve his rights— *i.e.*, for a declaration that Section 1.0 of the IPA is void at least to the extent it purports to require assignment of an idea for a new or competitive company when that idea does not involve the creation of any patentable or copyrightable inventions or any use of the employer's trade secrets.

31.     Additionally, Williams is entitled to a preliminary and permanent injunction barring Apple from enforcing Section 1.0 of the IPA against Williams insofar as it illegally restrains him from "engaging in a lawful profession, trade, or business."  Cal. Bus. & Prof. Code § 16600.  Apple's attempt to enforce this unlawful contract provision has caused irreparable injury to Williams, and unless Apple is enjoined from pursuing further illegal enforcement, Williams will continue to suffer irreparable injury for which he has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainant Williams prays for judgment and relief as follows:

a.     For a declaratory judgment against Cross-Defendant Apple that Section 1.0 of the IPA is void at least to the extent it purports to require assignment of an idea for a new or competitive company when that idea does not involve the creation of any patentable or copyrightable inventions or any use of the employer's trade secrets;

b.     For a preliminary and/or permanent injunction against Apple, including its

1   directors, officers, employees, and agents, as well as those in active participation with them or

2   with Apple, restraining and enjoining them from enforcing contractual restraints of trade against

3   Williams;

4       c.      For an award of attorney's fees as allowed by law, including under Cal. Civ. Proc.

5   Code § 1021.5, costs of suit as allowed by law; and

6       d.      For such other and further relief as the Court may deem just and proper.

7

8   DATED:  February 13, 2020              Respectfully submitted,

9                                   By   /s/ Claude M. Stern

10                                       QUINN EMANUEL URQUHART &
11                                        SULLIVAN, LLP
                                         Claude M. Stern
12                                       David Eiseman

13                                       Attorneys for Defendant
14                                       Gerard Williams III

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

I am employed by Quinn Emanuel Urquhart & Sullivan in the County of San Mateo, State of California. I am over the age of 18 and not a party to this action. My business address is: 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, CA 94065. On February 13, 2020, I served the following document(s):

**DEFENDANT WILLIAMS' CROSS-COMPLAINT AGAINST APPLE INC. FOR DECLARATORY RELIEF (CAL. CIV. PROC. CODE § 1060)**

| X | **By electronic service.** Based on a court order, an agreement of the parties to accept service by electronic transmission and/or pursuant to CRC 2.251(b)(1)(B), I caused the above-referenced document(s) to be sent to the person(s) at the electronic address(es) listed below. |
|---|---|

Joshua H. Lerner (Bar No. 314018)  
GIBSON DUNN & CRUTCHER, LLP  
555 Mission Street, Suite 3000  
San Francisco, CA 90071  
Telephone: (415) 393-8254  
E-Mail: jlerner@gibsondunn.com

Ilissa Samplin (Bar. No. 314018)  
GIBSON DUNN & CRUTCHER, LLP  
333 South Grand Avenue  
Los Angeles, CA 90071  
Telephone: (213) 229-7354  
E-Mail: isamplin@gibsondunn.com

Attorneys for Plaintiff  
Apple Inc.

I declare that I am employed in the office of a member of the bar of this court whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on February 13, 2020, at Redwood Shores, California.

*/s/ Alex Wolinsky*

Case No. 19-cv-352866  
EXH. I 008  
WILLIAMS' CROSS-COMPLAINT AGAINST APPLE

# Exhibit "J"



BA20220226048



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20220226048 |
| Date Filed: 5/16/2022 |

B0742-1898 05/16/2022 8:45 PM Received by California Secretary of State

---

**Entity Details**

| | |
| --- | --- |
| Limited Liability Company Name | TT ENTERTAINMENT LLC |
| Entity No. | 202027510621 |
| Formed In | CALIFORNIA |

**Street Address of Principal Office of LLC**

| | |
| --- | --- |
| Principal Address | 4 SHOREVIEW<br>NEWPORT COAST, CA 92657 |

**Mailing Address of LLC**

| | |
| --- | --- |
| Mailing Address | 4 SHOREVIEW<br>NEWPORT COAST, CA 92657 |
| Attention | |

**Street Address of California Office of LLC**

| | |
| --- | --- |
| Street Address of California Office | 4 SHOREVIEW<br>NEWPORT COAST, CA 92657 |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
| --- | --- |
| ➕ TUYEN NGUYEN | 4 SHOREVIEW<br>NEWPORT COAST, CA 92657 |

**Agent for Service of Process**

| | |
| --- | --- |
| Agent Name | TUYEN NGUYEN |
| Agent Address | 4 SHOREVIEW<br>NEWPORT COAST, CA 92657 |

**Type of Business**

| | |
| --- | --- |
| Type of Business | ENTERTAINMENT & PERFORMANCE PROMOTION |

**Email Notifications**

| | |
| --- | --- |
| Opt-in Email Notifications | No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail. |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
| --- | --- |
| ➕ TUYEN NGUYEN | 4 SHOREVIEW<br>NEWPORT COAST, CA 92657 |

**Labor Judgment**

No Manager or Member of this Limited Liability Company has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

EXH. J_001

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*DAVE TAX*
_____
Signature

*05/16/2022*
_____
Date

B0742-1899 05/16/2022 8:45 PM Received by California Secretary of State

EXH. J_002

# Exhibit "K"

G_____

# IN THE COURT OF APPEAL
## OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT, DIVISION THREE

**GERARD RICHARD WILLIAMS III,**
*Petitioner,*

*v.*

**THE SUPERIOR COURT OF ORANGE COUNTY,**
*Respondent;*

**HUNG HUYNH,**
*Real Party in Interest.*

SUPERIOR COURT OF ORANGE COUNTY • DEPT. C15
NO. 30-2024-01436961-CU-PO-CJC
HON. MICHAEL STRICKROTH, JUDGE • TEL: (657) 622-5215

# PETITION FOR WRIT OF MANDATE, PROHIBITION, OR OTHER EXTRAORDINARY RELIEF

**COMPLEX APPELLATE
LITIGATION GROUP LLP**
Johanna Schiavoni (No. 248501)
johanna.schiavoni@calg.com
*Matt Stucky (No. 248569)
matt.stucky@calg.com
600 W. Broadway, Suite 700
San Diego, CA 92101
(619) 642-2929 • Fax: (415) 726-2527

ATTORNEYS FOR PETITIONER
**GERARD RICHARD WILLIAMS III**

EXH. K_001

## Certificate of Interested Entities or Persons

(Cal. Rules of Court, rule 8.208.)

Pursuant to California Rules of Court, rule 8.208, petitioner Gerard Richard Williams III discloses the following interested entities and persons: none.

Respectfully submitted,

July 28, 2025

**Complex Appellate Litigation Group LLP**
Johanna Schiavoni
Matt Stucky

By /s/ Matt Stucky
Matt Stucky

*Attorneys for Petitioner*
*Gerard Richard Williams III*

2

EXH. K_002

# Table of Contents

Certificate of Interested Entities or Persons.................................2

Table of Authorities .........................................................5

Introduction..................................................................9

Petition for Writ of Mandate, Prohibition, or
    Other Extraordinary Relief ..................................... 14

    I.    The Parties ................................................. 14

    II.    Timeliness of Petition ............................. 15

    III.    Summary of Material Facts ..................... 15

    IV.    Basis for Relief ............................................ 20

    V.    Necessity for Writ of Mandate or Prohibition .......... 21

    VI.    Immediate Stay Is Not Requested ........................... 23

    VII.    Authenticity of Exhibits ........................... 23

Prayer .......................................................................... 24

Verification..................................................................... 26

Memorandum of Points and Authorities ...................................... 27

    I.    The respondent court erred in denying Williams's
        motion to compel the clerk to enter a dismissal of
        the action. ................................................ 27

        A.    The clerk had a ministerial duty to enter
            the dismissal, and the court had no
            discretion to reject the dismissal. ................... 27

        B.    The dismissal was deemed filed on the
            date it was received by the clerk, and the
            dismissal was effective immediately.............. 33

    II.    The respondent court erred in finding that Huynh
        could seek relief under Code of Civil Procedure
        section 473 to vacate the dismissal when the issue
        was raised only in his opposition to Williams's
        motion. ................................................... 36

EXH. K_003

      A.    The respondent court could grant relief
under section 473 only if Huynh diligently
filed a noticed motion and after allowing
Williams an opportunity to oppose the
request for relief................................................ 38

      B.    Huynh forfeited any request for relief
under section 473, subdivision (b) by not
making a timely request................................. 41

      C.    Huynh is not entitled to relief from the
dismissal under section 473,
subdivision (d). ................................................. 45

Conclusion ................................................................................... 48

Certificate of Word Count.......................................................... 50

4

EXH. K_004

## Table of Authorities

### *Cases*

*A & B Metal Products v. MacArthur Properties, Inc.*
  (1970) 11 Cal.App.3d 642 .................................................. 34

*Abelleira v. District Court of Appeal, Third Dist.*
  (1941) 17 Cal.2d 280 ............................................................ 22

*Aetna Casualty & Surety Co. v. Humboldt Loaders, Inc.*
  (1988) 202 Cal.App.3d 921 .................................................. 30

*Arambula v. Union Carbide Corp.*
  (2005) 128 Cal.App.4th 333 ..........................................*passim*

*Associated Convalescent Enterprises v. Carl Marks &
  Co., Inc.*
  (1973) 33 Cal.App.3d 116 ............................................. 22, 30

*Avila v. Chua*
  (1997) 57 Cal.App.4th 860 .................................................. 46

*Bergloff v. Reynolds*
  (1960) 181 Cal.App.2d 349 ................................................. 39

*Bowden v. Green*
  (1982) 128 Cal.App.3d 65 ............................................. 31, 32

*Carlson v. State of California Department of Fish &
  Game*
  (1998) 68 Cal.App.4th 1268 ................................................ 35

*Conservatorship of Becerra*
  (2009) 175 Cal.App.4th 1474 ............................................... 40

*Conservatorship of Martha P.*
  (2004) 117 Cal.App.4th 857 ................................................ 30

*Dill v. Berquist Construction Co.*
  (1994) 24 Cal.App.4th 1426 ............................................... 47

*Egly v. Superior Court*
  (1970) 6 Cal.App.3d 476 ................................... 28, 29, 30, 42

*Elms v. Elms*
  (1946) 72 Cal.App.2d 508 ................................................... 40

*Franklin Capital Corp. v. Wilson*
  (2007) 148 Cal.App.4th 187 ............................................... 29

EXH. K_005

*General Atomics v. Superior Court*
(2021) 64 Cal.App.5th 987 .................................................. 23

*Gogri v. Jack in the Box Inc.*
(2008) 166 Cal.App.4th 255 ............................................... 27

*Golden Door Properties, LLC v. Superior Court*
(2020) 53 Cal.App.5th 733 ................................................ 40

*Harris v. Billings*
(1993) 16 Cal.App.4th 1396 .......................................... 22, 30

*Horsford v. Board of Trustees of California State University*
(2005) 132 Cal.App.4th 359 ............................................... 38

*Howard v. Thrifty Drug & Discount Stores*
(1995) 10 Cal.4th 424 ....................................................... 21

*Huntington Park Imp. Co. v. Superior Court*
(1911) 17 Cal.App. 692 ..................................................... 42

*Jackson v. Kaiser Foundation Hospitals, Inc.*
(2019) 32 Cal.App.5th 166 ................................................ 37

*Kaufman v. Superior Court*
(1896) 115 Cal. 152 ................................................ 27, 28, 30

*King v. Superior Court*
(1936) 12 Cal.App.2d 501 ................................................. 42

*Lee v. Wells Fargo Bank, N.A.*
(2001) 88 Cal.App.4th 1187 .............................................. 37

*Linstead v. Superior Court*
(1936) 17 Cal.App.2d 9 ..................................................... 38

*Long v. Superior Court in and for Orange County*
(1936) 14 Cal.App.2d 753 ....................................... 31, 34, 42

*Martin v. Cook*
(1977) 68 Cal.App.3d 799 ........................................... 39, 43

*McDonald v. Severy*
(1936) 6 Cal.2d 629 ......................................................... 38

*Mercantile Collection Bureau v. Pinheiro*
(1948) 84 Cal.App.2d 606 ........................................... 45, 48

*Nickola v. Superior Court*
(1952) 111 Cal.App.2d 620 ...................................... 28, 30, 31

6

*O'Dell v. Freightliner Corp.*
    (1992) 10 Cal.App.4th 645 ................................................... 30

*Olsen v. Harbison*
    (2005) 134 Cal.App.4th 278 ............................................... 38

*Oskooi v. Fountain Valley Regional Hospital*
    (1996) 42 Cal.App.4th 233 ................................................. 21

*Paniagua v. Orange County Fire Authority*
    (2007) 149 Cal.App.4th 83 ................................................. 22

*Paul E. Iacono Structural Engineer, Inc. v. Rizzo*
    (1984) 162 Cal.App.3d 803 ................................................ 21

*Plaza Hollister Ltd. Partnership v. County of San Benito*
    (1999) 72 Cal.App.4th 1 ..................................................... 47

*Rogers v. Transamerica Corp.*
    (1935) 6 Cal.App.2d 340 .................................................... 28

*Rojas v. Cutsforth*
    (1998) 67 Cal.App.4th 774 ................................................. 34

*Romadka v. Hoge*
    (1991) 232 Cal.App.3d 1231 ........................................ 45, 46

*Rosen v. Robert P. Warmington Co.*
    (1988) 201 Cal.App.3d 939 ................................................ 30

*Sanabria v. Embrey*
    (2001) 92 Cal.App.4th 422 ................................................. 48

*Schenkel v. Resnik*
    (1994) 27 Cal.App.4th Supp. 1 .......................................... 48

*Siegal v. Superior Court*
    (1968) 68 Cal.2d 97 ........................................................... 49

*Silverton v. Free*
    (1953) 120 Cal.App.2d 389 ................................................ 22

*Thompson v. Vallembois*
    (1963) 216 Cal.App.2d 21 .................................................. 41

*United Farm Workers of America v. Agricultural Labor
    Relations Bd.*
    (1985) 37 Cal.3d 912 ......................................................... 34

*Volkswagen of America, Inc. v. Superior Court*
    (2001) 94 Cal.App.4th 695 ................................................. 15

EXH. K_007

*W. Bradley Electric, Inc. v. Mitchell Engineering*
    (2024) 100 Cal.App.5th 1 .................................... 44, 46, 47, 48

*Whittier Union High Sch. Dist. v. Superior Court*
    (1977) 66 Cal.App.3d 504 ............................................. 46, 47

*Younessi v. Woolf*
    (2016) 244 Cal.App.4th 1137 ........................................ 44, 48

*Zapanta v. Universal Care, Inc.*
    (2003) 107 Cal.App.4th 1167 ............................................. 30

### Constitutional Provisions

Cal. Const., art. VI, § 3 .................................................. 14

Cal. Const., art. VI, § 10 ................................................ 14

### Statutes

Code Civ. Proc., § 473 .............................................*passim*

Code Civ. Proc., § 581 .............................................*passim*

Code Civ. Proc., § 1010.6 ............................................... 33

Code Civ. Proc., § 1102 ................................................. 22

Gov. Code, § 69100 ..................................................... 14

### Rules

Cal. Rules of Court, rule 1.20 ......................................... 33

Cal. Rules of Court, rule 2.118 ........................................ 35

Cal. Rules of Court, rule 8.486 ....................................... 23

Cal. Rules of Court, rule 8.493 ....................................... 25

Super. Ct. Orange County, Local Rules, rule 352 ....................... 33

EXH. K_008

G_____

# IN THE COURT OF APPEAL
# OF THE STATE OF CALIFORNIA
### FOURTH APPELLATE DISTRICT, DIVISION THREE

---

**GERARD RICHARD WILLIAMS III,**
*Petitioner,*

*v.*

**THE SUPERIOR COURT OF ORANGE COUNTY,**
*Respondent;*

---

**HUNG HUYNH,**
*Real Party in Interest.*

---

# PETITION FOR WRIT OF MANDATE OR
# OTHER EXTRAORDINARY RELIEF

---

### Introduction

This petition asks the Court of Appeal to address the respondent court's decision that disrupts the orderly system for administration of justice created by the Legislature and as consistently applied by California courts. As part of that system, a plaintiff's properly filed request for dismissal under Code of Civil Procedure section 581[1] is effective *immediately* when received by the clerk for filing regardless of how the request was

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

EXH. K_009

submitted, either as paper or electronic transmittal, and no
matter how long it takes a clerk to "officially file" the dismissal.

As California appellate courts have made clear, a dismissal
has consequences. Absent pending claims by any other party
when the plaintiff's dismissal is transmitted to the clerk, the case
*is dismissed* and the court *loses jurisdiction* to conduct further
proceedings (other than a limited set of post-judgment matters).
Subsequent actions taken by a court without jurisdiction are
void.

For more than a century, California courts have made clear
that these rules have *no exceptions*: neither the clerk nor the
court has discretion to refuse to dismiss the action or otherwise
prevent the entry of dismissal even if the filing is in some form of
limbo between the date it is received and when it is officially
filed-stamped and placed in the appropriate court file. These
bright-line rules avoid the injection of uncertainty regarding the
status of dismissal filings.

Separately, the Legislature has established a procedure
under section 473 to provide a "fail safe" in limited
circumstances, including proof of a "mistake" made in filing a
dismissal. To invoke the "fail safe" provisions of section 473 and
vacate an otherwise final dismissal, the plaintiff must timely file
a motion, supported by evidence directed at one of the statutory
grounds specified in section 473. The defendant is afforded due
process by being allowed an opportunity to file a response or
opposition. The trial court then reviews all evidence and

EXH. K_010

determines whether there is a valid ground to set aside the
dismissal and revive its jurisdiction.

Thus, the Legislature has created a two-step process for
addressing a potential "mistaken dismissal" scenario:  an
automatic, nondiscretionary dismissal under section 581 effective
immediately when the clerk receives the dismissal, and then a
potential "fail safe" under section 473, where a court *may* exercise
discretion to vacate a dismissal on limited grounds after
considering a duly noticed and supported motion to set aside the
dismissal.

Here, the respondent court disrupted this orderly process
by creating a *new "exception"* to the ministerial duty of the clerk
to "officially file" a dismissal duly requested under section 581,
which has long been applied by courts *without* exception.  The
respondent court erroneously allowed the clerk to exercise
discretion to reject the properly filed dismissal received weeks
earlier.  In the absence of a section 473 motion by real party in
interest Hung Huynh, the court lacked jurisdiction to do anything
further.  If allowed to stand, this new "exception" will sow
uncertainty as to the finality of section 581 dismissals and wreak
havoc for future litigants and courts seeking to understand the
finality of actions.

In this case, the irreparable harm is evident.  Due to the
respondent court's decision in allowing a clerk to exercise judicial
discretion and reject a properly filed and procedurally complete
dismissal – and thereby revive the court's own jurisdiction –
petitioner Gerard Richard Williams III is now forced to litigate

EXH. K_011

claims he reasonably believed were dismissed in December 2024.
Absent writ relief, Williams will not be able to challenge these
errors until he is forced to endure years of litigation and entry of
a void judgment in a previously and duly dismissed case.  This
petition asks this court to remedy this situation now by issuing a
writ of mandate or prohibition.

The underlying facts are straightforward:  Huynh filed a
personal injury complaint against Williams, but Huynh soon
abandoned his claim by electronically transmitting a completed
form request for dismissal with prejudice to the superior court
clerk pursuant to section 581.  The request for dismissal form
was valid on its face, properly transmitted to the court for
electronic filing and received by the clerk, and properly served on
Williams.  The clerk acknowledged that it received the dismissal,
but inexplicably did not "process and enter" it into the court's
records.  Instead, weeks later, the court's notice indicated that an
unidentified clerk rejected the dismissal at the direction of "the
courtroom," after Huynh's former attorney's legal assistant called
the court and asked to withdraw it.  No record was made of this
conversation.  This was unequivocally erroneous.

When Williams learned of the clerk's action to reject
Huynh's voluntary dismissal, he attempted to quickly remedy the
situation by moving the respondent court to compel the clerk to
enter the dismissal.  However, after a delay of more than six
months, the court denied Williams's motion by relying on
Huynh's assertion in an opposition brief that he now wanted to
withdraw the request and that he was entitled to relief under

EXH. K_012

section 473 on the basis that he made a "mistake" in dismissing
the action. The court reasoned that the clerk was under *no duty*
to enter the dismissal at the time it was submitted because
Huynh, more than six months later, was asserting the claim of
"mistake." However, at the time the clerk "rejected" the
dismissal, nothing was before the court indicating Huynh or his
counsel had made a mistake in transmitting it to the clerk.
Nevertheless, the court found that "even if" the clerk should have
been processed and entered the dismissal into the record, Huynh
could have filed a motion to seek relief under section 473 due to
his "mistake."

The respondent court erred for two reasons. First, the
court was *required* to compel the clerk to dismiss the case
because Huynh's request for dismissal was deemed filed as a
matter of law on the date it was received by the clerk, who had a
ministerial duty to enter the dismissal into the official court
records.

Second, although the respondent court correctly recognized
that Huynh had a general right to seek relief from the dismissal
under section 473 based on his assertion of an alleged mistake, it
erred by allowing Huynh to bypass the requirement that he file a
timely, noticed motion seeking relief on the narrow grounds
permitted by section 473. Instead, the court allowed Huynh to
assert, more than six months later, for the first and only time in
his opposition to Williams's motion, that he filed the dismissal
due to his mistake. Compounding this error, the court refused to
consider Williams's evidence submitted with his reply to show

EXH. K_013

Huynh's claim of a mistake was a ruse to disguise his change of heart. Regardless, by the time Huynh raised the issue, it was untimely and not before the court at the time of the "rejection" of the dismissal.

Jurisdiction is a cold calculated analysis; either a court has jurisdiction, or it cannot act. The respondent court plainly erred by ignoring clear statutes and the unanimous appellate authority establishing the procedural rules governing dismissals and the accepted process for correcting an allegedly mistakenly filed dismissal. As a result, the court is conducting further proceedings in an action where it has no jurisdiction.

All further actions, including a potential judgment after trial, will be void. Williams has no adequate remedy to correct this error other than writ relief from this court. Absent such relief, Williams will be forced to respond to the complaint by August 5, 2025, engage in discovery, and otherwise prepare for a trial on non-actionable claims that have been effectively dismissed as a matter of law. The most efficient route to correct this error is for this court to grant appropriate writ relief.

## Petition for Writ of Mandate, Prohibition, or Other Extraordinary Relief

### I.    The Parties

1.    Gerard Richard Williams III is the petitioner in this civil writ proceeding and defendant in the underlying action, *Huynh v. Williams* (Super. Ct. Orange County, No. 30-2024-01436961-CU-PO-CJC), within this court's appellate jurisdiction. (PE 9; Cal. Const., art. VI, §§ 3, 10; Gov. Code, § 69100, subd. (d).)

14

EXH. K_014

2.    Respondent is the Superior Court of Orange County.
Judge Michael J. Strickroth has been assigned to the matter for
all purposes.  (PE 9.)

3.    Real party in interest is Hung Huynh, plaintiff in the
proceeding below.  (PE 9.)

## II.    Timeliness of Petition

4.    This petition is timely.  It challenges the superior
court's order entered and served on July 8, 2025.  (PE 313, 316,
320.)  As a common law petition for writ of mandate, it is filed
well within the typical 60-day laches period.  (See *Volkswagen of
America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 701.)
This petition was filed at the earliest reasonable opportunity
after Williams retained appellate counsel to prepare the petition.

## III.    Summary of Material Facts

5.    In his complaint filed in October 2024, Huynh alleges
he was injured while he was a guest at Williams's house when a
backyard fountain fell on his foot.  (PE 11.)  Huynh's complaint
alleges causes of action for negligence and premises liability.  (PE
12-14.)  The details of Huynh's allegations and claims are not
relevant to this writ proceeding.

6.    On December 2, 2024, less than two months after
Huynh filed his complaint, he submitted a "request for dismissal"
of his complaint with prejudice under section 581 using the
Judicial Council form.  (PE 18.)  Huynh indicated there was no
waiver of court fees, and included a signature from his counsel of
record, the Wilshire Law Firm.  (PE 18.)  On the same day,

EXH. K_015

Huynh served a copy of the request on Williams and submitted a
proof of service to the court. (PE 20.)

7. The clerk acknowledged that it received a copy of the
request for dismissal on December 2, 2024. (PE 23.) However,
for unknown reasons, the clerk never processed and "officially"
filed the dismissal.

8. Days later, on December 18, 2024, Huynh filed a
notice of substitution of counsel, signed on December 13, to
replace the Wilshire Law Firm with new counsel. (PE 25.)

9. On December 16, 2024 (three days after Huynh and
his attorneys signed the substitution of counsel to withdraw his
representation by the Wilshire Law Firm) the clerk served a
notice of rejection of the filing with a note that "Per the
courtroom, rejected at the request of Olivia Maclay at Wilshire
Law Firm." (PE 23.) The clerk's notice did not identify any other
reasons for the rejection or any details about the "request" from
the Wilshire Law Firm representative. (PE 23.)

10. On December 27, 2024 – 11 days after the clerk
rejected Huynh's request – Williams quickly filed a "motion for
order directing the clerk to enter an order recognizing the
voluntary dismissal of this action with prejudice." (PE 34,
capitalization omitted.) Williams argued that the clerk had a
ministerial duty to enter the dismissal upon receipt of Huynh's
request to dismiss and neither the clerk nor the court had
discretion to reject the filing. (PE 38.) Williams asserted that
the action was effectively dismissed on December 2, 2024, and

EXH. K_016

sought a court order compelling the clerk to enter an order
recognizing that the action was dismissed.  (PE 39.)

11.    Williams's motion was calendared for hearing more
than six months later, on July 7, 2025, and the respondent court
denied his request to advance the hearing date.  (PE 82, 86.)  The
court, however, did accept a stipulation extending the time for
Williams to file a responsive pleading to August 5, 2025.  (PE 91,
97.)  Meanwhile, Huynh took no action of his own to address the
dismissal.

12.    In late June 2025, Huynh filed his opposition to the
motion and, in his supporting declaration, focused on explaining
*why* he wished to retract his dismissal rather than explaining the
legal authority for the clerk to reject the filing.  (PE 100.)  Huynh
asserted that Williams and his wife tricked him into dismissing
the lawsuit.  (PE 101-102.)  Huynh speaks Vietnamese and
claims he has little to no understanding of English.  (PE 113.)  He
explained he is a "well-established and highly popular"
entertainer in the Vietnamese community and was close friends
with Williams and his wife.  (PE 113.)  He claimed Williams and
his wife took advantage of the language barrier to convince him
to ask his attorneys to dismiss the action despite Huynh's desire
to only stay the action to discuss a resolution.  (PE 114-119.)
Huynh declared that when he discovered the alleged deception,
he retained a new attorney who asked his prior counsel to
withdraw the dismissal.  (PE 119.)

13.    Huynh argued that because his former attorney
informed the clerk that the request for dismissal was submitted

17

in error, the clerk could properly reject the filing because it was void. (PE 104-105.)

14.    Huynh alternatively argued that even if the clerk had a duty to file the request and dismiss the case, the court should grant Huynh relief from the dismissal under section 473, subdivision (b) because the request was made by mistake, or under subdivision (d) because entry of the dismissal would be a clerical mistake because the dismissal was void. (PE 105-107.) Huynh only made this request citing section 473 in his opposition to Williams's motion and never filed a noticed motion for relief under section 473.

15.    In his reply brief, Williams explained that even if Huynh could seek relief under section 473, that issue was not properly before the court because Huynh was not permitted to raise the claim in his opposition, but rather was required to file a formal noticed motion.[2]  (PE 153.)  He also argued that no authority supported Huynh's claim that the clerk could reject the request for dismissal.  (PE 152.)

16.    While noting that Huynh's explanation about his alleged mistake was irrelevant at this stage, Williams also refuted that claim as completely false.  (PE 133.)  Williams

---

[2] Williams submitted a reply *and* an amended reply on the basis that his original reply exceeded the page limit for a reply brief.  (PE 211.)  He asked the court to consider the amended reply if it would not grant leave for the oversized reply.  (PE 211.) The respondent court did not address this issue in its ruling and, by not striking the longer brief, presumably considered it.  This petition discusses and cites to the longer reply brief, but also includes the amended reply brief in the appendix of exhibits.

EXH. K_018

submitted his own evidence revealing that Huynh stated on
social media and to friends that he intended to dismiss the case.[3]
(PE 134-151.)  Williams also noted an admission by one of
Huynh's close associates that Huynh had concocted the story that
Williams and his wife tricked him into the dismissal.  (PE 137-
139.)  Williams submitted declarations in support of his reply
brief and filed evidentiary objections to Huynh's declaration.  (PE
159, 177, 264.)  Huynh filed his own objections to Williams's
evidence.  (PE 186, 191.)

      17.    In a tentative ruling, the respondent court expressed
that it intended to deny the motion.  (PE 318.)

      18.    At the hearing, the court stated it did not consider
Williams's "new evidence" submitted with his reply.  (PE 281.)
The respondent court heard arguments from counsel, asked no
questions and made no comments, and took the matter under
submission.  (PE 298.)  Williams's counsel requested that if the
court was going to take up Huynh's claim of mistake, then the
court should first rule on Williams's objections to Huynh's
declaration.  (PE 288.)

      19.    In an order entered the next day, the court confirmed
the tentative ruling and denied Williams's motion seeking to
have the dismissal entered.  (PE 313-314.)  In that incorporated
ruling, the court found that the dismissal was never "entered"

---

    [3] Williams also provided some context for why Huynh may
have had a change of heart:  Williams had filed a complaint
against Huynh in a separate action.  (PE 143, fn. 7; PE 44.)  That
complaint – in an entirely independent proceeding – has since
been dismissed.

EXH. K_019

and concluded it had "no obligation" to enter the dismissal over
Huynh's objection.  (PE 314.)  The court accepted Huynh's later
assertion that his prior counsel's transmission of the dismissal
was unauthorized and found it was "submitted due to a
miscommunication between Plaintiff and his attorney, and
[Huynh's] intent was not to dismiss the case."  (PE 314.)
Accordingly, the court found the dismissal was properly
withdrawn "by the Court at the request of Plaintiff's counsel."
(PE 314.)

     20.    The respondent court added that "even if" the
dismissal had been entered, Williams's motion should be denied
because Huynh "could file" a section 473 motion to set aside the
dismissal.  (PE 314.)  The respondent court did not address
Williams's evidentiary objections.

     21.    The respondent court's denial order was entered and
served by the clerk on July 8, 2025.  (PE 316).  Huynh provided
notice of the ruling on the same day.  (PE 320.)

## IV.    Basis for Relief

     22.    The respondent court erred by denying Williams's
motion to compel the clerk to enter a dismissal order.  Neither
the clerk nor the court had discretion to refuse to dismiss the
action after Huynh filed his request for dismissal.  Instead, the
dismissal is deemed entered on the date it is received and is
effective immediately.  At that point, the court lost jurisdiction to
conduct further proceedings.

     23.    The respondent court further erred by accepting
Huynh's evidence that he made a mistake in requesting the case

EXH. K_020

be dismissed and by allowing Huynh to make this claim for relief
under section 473 in his opposition to Williams's motion.  Huynh
could seek and obtain such relief only by diligently filing a
noticed motion under section 473.  The respondent court's error
was compounded by a lack of due process when the court refused
to consider Williams's objections to Huynh's new evidence and
the court's refusal to consider Williams's evidence submitted with
his reply to rebut Huynh's claimed mistake.

## V.    Necessity for Writ of Mandate or Prohibition

24.    Writ review is appropriate because Williams has no
plain, speedy, or adequate remedy other than the relief sought by
this petition.  The order denying his motion to compel the clerk to
enter a dismissal order is not immediately appealable.  (See, e.g.,
*Oskooi v. Fountain Valley Regional Hospital* (1996) 42
Cal.App.4th 233, 237 [order denying motion to dismiss is not
appealable].)  In a similar procedural scenario, at least one court
has concluded that a posttrial and judgment appeal challenging a
pretrial denial of a motion to dismiss is an inadequate remedy
when the motion is meritorious such that a trial court's duty to
dismiss an action "may be directly enforced by an extraordinary
writ from a reviewing court, either mandamus to compel
dismissal, or prohibition to restrain the trial."  (*Paul E. Iacono
Structural Engineer, Inc. v. Rizzo* (1984) 162 Cal.App.3d 803, 809,
disapproved on another ground in *Howard v. Thrifty Drug &
Discount Stores* (1995) 10 Cal.4th 424, 433-434.)

25.    Williams has brought a motion for reconsideration
before the respondent court, but the earliest possible hearing

EXH. K_021

date for that motion is not until November 3, 2025. (PE 330.)
Williams is filing this writ petition now to ensure his challenge to
the respondent court's denial order is timely and to avoid months
of litigation that will have occurred by the time the motion for
reconsideration is heard.

      26.    A writ of mandate is the proper remedy "to compel
the dismissal of an action where the entry of the dismissal is not
subject to any discretionary consideration, and the duty to enter
dismissal becomes ministerial." (*Silverton v. Free* (1953) 120
Cal.App.2d 389, 390 [issuing writ of mandate to compel dismissal
of action following request to dismiss under section 581].)

      27.    Alternatively, a writ of prohibition is an appropriate
remedy where a respondent court conducts proceedings without
jurisdiction over those proceedings. (§ 1102; *Abelleira v. District
Court of Appeal, Third Dist.* (1941) 17 Cal.2d 280, 290-291.) A
trial court is without subject matter jurisdiction to act further in
an action after a plaintiff's request to dismiss the action pursuant
to section 581. (*Harris v. Billings* (1993) 16 Cal.App.4th 1396,
1405; *Associated Convalescent Enterprises v. Carl Marks & Co.,
Inc.* (1973) 33 Cal.App.3d 116, 120.)

      28.    Williams will be irreparably harmed absent writ
relief. Without this court's intervention, Huynh's underlying
action will proceed despite the respondent court's lack of
jurisdiction following Huynh's request to dismiss the action with
prejudice. As this court has previously explained, all orders and
any judgment entered after that dismissal " 'are simply void.' "
(*Paniagua v. Orange County Fire Authority* (2007) 149

22

EXH. K_022

Cal.App.4th 83, 89.)  Writ relief is appropriate when the
erroneous denial of a motion will result in a trial on
nonactionable claims and the appellate court's intervention in the
writ proceeding would be "dispositive."  (*General Atomics v.
Superior Court* (2021) 64 Cal.App.5th 987, 1001-1002.)

## VI.    Immediate Stay Is Not Requested

29.    For now, Williams is not requesting a stay from this
court.  Williams has moved to stay proceedings in the trial court
to allow that court to resolve the motion for reconsideration, but
that stay request is not set to be heard until November and
Williams does not need immediate relief from this court to stay
further proceedings.  (PE 382.)  If this writ proceeding is not
quickly resolved via an alternative writ or peremptory writ in the
first instance, Williams may request a stay later depending on
future actions in the trial court proceeding.  Williams will
immediately inform this court if any stay is issued by the
respondent court.

## VII.   Authenticity of Exhibits

30.    Except where indicated below, all exhibits
accompanying this petition are true copies of original documents
on file with the respondent court in support of and in opposition
to the motion as well as certain other documents on file in the
case which are necessary for a complete understanding of the
case and the challenged ruling.  (Cal. Rules of Court, rule
8.486(b).)

EXH. K_023

31.    The exhibits include the transcript of the respondent
court proceedings on July 7, 2025, as Exhibit 26.  (PE 279.)

32.    The complete Register of Actions printed from the
Superior Court of Orange County's website on July 26, 2025, is
included as Exhibit 33.

33.    The exhibits are incorporated herein by reference as
though fully set forth in this petition and are reproduced in their
entirety in the concurrently filed Exhibits in Support of Petition
for Writ of Mandate, Prohibition, or Other Extraordinary Relief.
The exhibits are paginated consecutively, and page references in
this petition are to the consecutive pagination.

## Prayer

Petitioner Gerard Richard Williams III prays that this
court:

1.    Issue a peremptory writ of mandate and/or
prohibition in the first instance directing respondent, the
Superior Court of Orange County in *Huynh v. Williams* (Super.
Ct. Orange County, No. 30-2024-01436961-CU-PO-CJC), to
compel the clerk to file Huynh's December 2, 2024, request for
dismissal, dismiss the action, and refrain from conducting further
proceedings in the underlying action beyond considering an
award of fees and costs; or

2.    Issue an alternative writ of mandate or other
extraordinary relief directing respondent, the Superior Court of
Orange County in *Huynh v. Williams* (Super. Ct. Orange County,
No. 30-2024-01436961-CU-PO-CJC), to grant the relief specified
in paragraph one of this prayer, or to show cause why it should

24

EXH. K_024

not be ordered to do so, and upon return of the alternative writ, if
necessary, issue a peremptory writ as set forth in paragraph one
of this prayer; and

      3.    Award petitioner his costs (Cal. Rules of Court, rule
8.493); and

      4.    Grant such other relief as may be just and proper.

Respectfully submitted,

July 28, 2025

**Complex Appellate Litigation Group LLP**
Johanna Schiavoni
Matt Stucky

By <u>/s/ Matt Stucky</u>
Matt Stucky

*Attorneys for Petitioner*
*Gerard Richard Williams III*

25

EXH. K_025