**CALLAHAN & BLAINE, PC**
Edward Susolik (SBN 151081)
es@callahan-law.com
Raphael Cung (SBN 201829)
rcung@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444

**LAW OFFICES OF PAUL N. PHILIPS, APLC**
Paul N. Philips (SBN 187928)
pnp@pnplegal.com
9440 Santa Monica Boulevard, Suite 301
Beverly Hills, California 90210
Telephone: (323) 813-1126

*Additional counsel listed on next page*

Attorneys for Defendant GERARD RICHARD WILLIAMS III

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG HUYNH,<br><br>Plaintiff,<br><br>v.<br><br>GERARD RICHARD WILLIAMS III,<br><br>Defendant. | Case No. 2:25-cv-07351-JC<br><br>Hon. Jacqueline Chooljian<br><br>**DEFENDANT GERARD RICHARD WILLIAMS III'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Concurrently Filed:<br><br>Declaration of Gerard Richard Williams III<br><br><br>Date:      October 7, 2025<br>Time:     9:30 a.m.<br>Place:    Roybal Federal Courthouse<br>            Courtroom 750, 7th Floor<br>            255 East Temple Street<br>            Los Angeles, CA 90012 |

**THE TAMMY TRAN LAW FIRM**
Minh-Tam (Tammy) Tran (*pro hac vice* pending)
ttran@tt-lawfirm.com
4900 Fournace Place, Suite 418
Bellaire, Texas 77401
Telephone: (832) 372-4403

**KELLEY & ASSOCIATES**
Lloyd E. Kelley (*pro hac vice* pending)
kelley@lloydekelley.com
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: (281) 492-7766

Attorneys for Defendant GERARD RICHARD WILLIAMS III

//

//

//

//

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

OPPOSITION TO MOTION FOR REMAND

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS .................................................................... 2

    A.    Case Background ...................................................................... 2

    B.    Relevant Procedural History of The Removed State Court Action ....... 4

    C.    Defendant Gerard Richard Williams III And His Residency Versus Domicile .......................................................................... 6

III.  DEFENDANT'S REMOVAL WAS PROPER, AND THEREFORE THE COURT SHOULD DENY REMAND OF THIS ACTION ................... 9

    A.    Defendant's Removal Was Timely Given The Unique Circumstances Of The State Court Action ............................................. 9

    B.    Defendant Williams's Domicile Is Missouri, and Therefore He Was Not Precluded From Removing The State Court Action Under The Forum Defendant Rule ...................................................... 14

IV.  EVEN IF THE COURT DECIDES TO REMAND THIS ACTION, NO ATTORNEYS' FEES SHOULD BE AWARDED TO PLAINTIFF ............. 19

V.    CONCLUSION ................................................................................ 21

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
FAX (714) 241-4445

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Canesco v. Ford Motor Co.*,
  570 F. Supp. 3d 872 (C.D. Cal. 2021) ................................................................. 15

*Carvalho v. Equifax Info. Servs.*,
  629 F.3d 876 (9th Cir. 2010) ............................................................................... 10

*Casola v. Dexcom, Inc.*,
  98 F.4th 947 (9th Cir. 2024) ................................................................... 10, 11, 12

*Chan Healthcare Group, PS v. Liberty Mut. Fire Ins. Co.*,
  844 F.3d 1133 (9th Cir. 2017) ................................................................. 10, 11, 12

*Gardner v. Bliss Sequoia Ins. & Risk Advisors, Inc.*,
  434 F. Supp. 3d 862 (D. Nev. 2020) .................................................................... 10

*Garza v. Brinderson Constructors, Inc.*,
  178 F. Supp. 3d 906 (N.D. Cal. 2016) ................................................................. 15

*Greising v. C.P. Chemical Co.*,
  645 F. Supp. 553 (D. Minn. 1986) ................................................................. 12, 13

*Johnson v. Heublein Inc.*,
  227 F.3d 236 (5th Cir. 2000) ............................................................................... 14

*Jong v. General Motors Corp.*,
  359 F. Supp. 223 (1973) ...................................................................................... 15

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir . 2001) .............................................................................. 15

*Lemos v. Fencl*,
  828 F.2d 616 (9th Cir. 1987) ............................................................................... 20

*Lew v. Moss*,
  797 F.2d 747 (9th Cir. 1986) ............................................................................... 16

*Lion Raisins, Inc. v. Fanucchi*,
  788 F. Supp. 2d 1167 (E.D. Cal. 2011) ............................................................... 10

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE (714) 241-4444
FAX. (714) 241-4445

*Lively v. Wild Oats Mkts., Inc.*,
   456 F.3d 933 (9th Cir. 2006) ................................................................. 15

*Lott v. Pfizer, Inc.*,
   492 F.3d 789 (7th Cir. 2007) ................................................................. 20

*Lussier v. Dollar Tree Stores, Inc.*,
   518 F.3d 1062 (9th Cir. 2008) ....................................................... 19, 20

*Mattel, Inc. v. Bryant*,
   441 F. Supp. 2d 1081 (C.D. Cal. 2005) .......................................... 10, 11

*Mondragon v. Capital One Auto Fin.*,
   736 F.3d 880 (9th Cir. 2013) ................................................................. 15

*Moore v. Permanente Med. Grp., Inc.*,
   981 F.2d 443 (9th Cir. 1992) ................................................................. 19

*Solorzano v. American Nat'l Ins. Co.*,
   609 F. Supp. 144 (C.D. Cal. 1985) ...................................................... 20

*Weible v. United States*,
   244 F.2d 158 (9th Cir.1957) .................................................................. 15

**Statutes**

28 U.S.C § 1441 ....................................................................................... 12

28 U.S.C. § 1441(b)(2) ............................................................................ 14

28 U.S.C. § 1446 ........................................................................................ 4

28 U.S.C. § 1446(b) ........................................................................... 10, 14

28 U.S.C. § 1446(b)(1) .............................................................................. 9

28 U.S.C. § 1447(c) ................................................................................. 19

Cal. Civ. Proc. Code § 473 ........................................................................ 6

**OTHER AUTHORITIES**

26 CFR § 25.2501-1(b) ............................................................................ 16

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

OPPOSITION TO MOTION FOR REMAND

1

**OPPOSITION TO MOTION FOR REMAND**

2

**I.    INTRODUCTION**

3

4

5

6

7

8

9

This is a personal injury case originally brought in Orange County Superior Court (the "State Court") and removed to this Court by Defendant Gerard Richard Williams III ("Williams") based on diversity and removal jurisdiction.  On or about February 19, 2024, Plaintiff Hung Huynh ("Huynh"),[1] a prominent singer from Vietnam, hurt himself by self-inflicted means while at Williams's residence, but because of Williams's success and prosperity, Huynh has demanded a shocking windfall of some $50 million based on his own negligence.

10

11

12

13

14

15

Huynh filed suit in State Court on October 31, 2024, and served the Complaint on Williams on November 27, 2024.  On December 2, 2024, only 5 after days after service, and well before the 30-day deadline to answer in State Court (and the same 30-day timeline to remove the action to federal court), Huynh initially dismissed his State Court Complaint with prejudice.  Thus, there was no case to remove.

16

17

18

19

20

21

Huynh subsequently changed his mind and fired his original attorneys, and eight months of motion practice ensued, regarding whether his December 2, 2024 dismissal was effective and should be enforced.  When the State Court eventually ruled on July 8, 2025 that the dismissal should not be enforced and/or could have been set aside, only then did the State Court Action formally become "un-dismissed" and come back into existence.

22

23

24

25

Given such circumstances, the relevant caselaw, and the rationale of not forcing defendants to remove to federal court prematurely and risk sanctions and when the grounds to do so are uncertain, Williams's removal of this action on August 7, 2025 was timely, contrary to Huynh's meritless arguments.

26

27

28

---

[1] Huynh performs under the name "Dam Vinh Hung" and is popularly known under that name.  During this litigation, however, he will be referred to under his legal, actual name.

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

Huynh also seeks to remand based on his second argument that because Williams is a California "citizen," Williams is a forum defendant disqualified from removal. Huynh is wrong here, too. "Citizenship" for diversity and removal purposes is based on ***domicile***, not residency. While Williams is currently a resident of California, and his lived in Texas for an extended period, he is a domiciliary of Missouri. He was born and grew up there; many of his most cherished personal possessions remain there; Williams has promised his parents that he will return there; and Williams plans to establish a technology-based business in Missouri that could be staffed remotely with workers and partners from across the U.S. and globally.

Finally, even if the Court decides to remand this action, which it should not, the removal was legitimately made and involved challenging, unclear issues of law regarding the timing of removal and domicile versus residency. As such, the Court should deny Huynh's demand for attorney's fees in making the Motion to Remand.

## II.    STATEMENT OF FACTS

### A.    Case Background

Defendant Gerard Richard Williams III is a renowned technology innovator. Among other things, he has over 60 patents for processor technology used in many phones around the world. He was the lead SoC (system on chip) architect at Apple, and helped design and develop the chips used in Apple's iPhone, iPad, Apple-TV, and MAC product lines. Many of these inventions are still used in iPhone models and MAC computers today. Williams eventually moved on from Apple, and in 2021, sold his highly successful technology business, Nuvia Inc., to Qualcomm, based in San Diego.

In 2014, Gerard Williams married Tuyen Tiffany Williams (née Tuyen Nguyen), a Vietnamese-American immigrant, and through her, developed an affinity for Vietnamese culture and music, including learning to sing songs in Vietnamese.

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

The Williams's became patrons of Vietnamese music and performers, which led Gerard Williams to this saga today.

On February 19, 2024, while performing a concert hosted at the residence of Williams, Plaintiff Hung Huynh, a singer from Vietnam, foolishly jumped on a 6-feet tall decorative water fountain, fell off, and hurt himself.

In the days shortly after, Huynh took to social media to admit that it was his own fault and apologize for it, and videos from the incident show indisputably the nature of the incident and Huynh's assumption of risk. The decorative water fountain should not have been utilized for climbing, for example, to make a "dramatic exit" from the performance as Huynh later acknowledged. Huynh's attempt to jump upon the fountain-head caused the destruction of the fountain, and he injured himself in the fall.

Huynh had befriended Williams and his wife since 2018, through their shared love of Vietnamese music. Williams is blessed to have been fortunate and prosperous in his career as a technology innovator, and he and his wife openly discussed with their close friend Huynh their good fortune, as well as business plans that may generate even more wealth in the future. No doubt with Williams's prosperity in mind, in the summer to fall of 2024, Huynh started hinting to Williams and his wife that after decades of performing music, and touring across Vietnam and the Vietnamese community in the U.S., he was "getting tired." Not coincidentally, Huynh had offended government authorities in Vietnam, and during this period, had been banned from performances in Vietnam for 9 months, resulting in no income from any such new performances.

When his hints for help to retire were not heeded, Huynh outright demanded money from Williams, first "only" $15 million, then $5 million, then back up to $20 million, and then still higher to $50 million, claiming he was due such amounts from the February 2024 accident that he himself caused. This despite the fact that after

OPPOSITION TO MOTION FOR REMAND

1    such incident, Huynh continued to perform about 55 energetic singing and dancing

2    concerts in Vietnam and the U.S., all of which he publicized.

3        Williams denies all liability against Huynh.  In fact, Huynh is liable to

4    **Williams** for, among other things, a vicious smear campaign that Huynh unleashed

5    on Williams, his wife, and even their 9-year-old daughter through his surrogates and

6    mouthpieces in the Vietnamese-language media and blogosphere, which resulted in

7    a number of death threats to Williams and his family.[2]

8        **B.    Relevant Procedural History of The Removed State Court Action**

9        Williams's removal of the State Court Action and the timing and

10   circumstances thereof can be considered only in the context of the unique procedural

11   history and timeline of such State Court Action.

12       On October 31, 2024, Plaintiff Hung Huynh (aka Dam Vinh Hung)

13   ("Plaintiff" or "Huynh") filed an action entitled *Huynh v. Williams*, Case No. 30-

14   2024-01436961-CU-PO-CJC, in Orange County Superior Court (the "State Court

15   Action").  *See* Ex. 5 to Not. of Removal, Dkt #1-5.

16       Notably, Huynh did not serve the summons and complaint on Defendant

17   Gerard Richard Williams III ("Williams"), via the latter's counsel acceptance of

18   such service, until November 27, 2024.  *See* Ex. 7 to Not. of Removal, Dkt #1-7.

19   Thus, under the 30-day removal deadline (*see* 28 U.S.C. § 1446), Williams had until

20   and through December 27, 2024 to file a Notice of Removal.

21       However, on December 2, 2024, five days after service of the Complaint,

22   Huynh submitted and served a Notice of Dismissal with prejudice of the State Court

23   Action, which was signed by one of Huynh's then-attorneys.  *See* Ex. 8 to Not. of

24   Removal, Dkt #1-8.  On December 12, 2024 – ten days after filing the dismissal –

25   Huynh's former counsel continued to represent in writing the belief that Huynh

26

27   [2] Williams has successfully obtained temporary restraining orders against a number
     of such Huynh surrogates in Texas State Court from continuing to defame, smear,
     and harass Williams and his wife.  *See Williams v. Pham, et al.*, Case No. 1242113,
28   County Civil Court for Harris County, Texas.

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

wanted the case dismissed, going as far as calling the clerk to check on why the clerk had not yet filed or entered a formal dismissal order.  *See* Ex. 17 to Not. of Removal, Dkt #1-17 at pp. 18-19 of 33.

On December 17, 2024, counsel for Williams exchanged emails with Huynh's former counsel, the Wilshire Law Firm.  In response to defense counsel asking about the status of the Dismissal, Huynh's former counsel responded, "We no longer represent Mr. Huynh.  [¶ ] Attorney Hoang, Mr. Huynh's new counsel contacted us for the first time yesterday, on behalf of Mr. Huynh, requesting that we contact the Court Clerk to communicate his desire to have the dismissal (which was pending) withdrawn.  We passed along that information to the clerk as requested.  [¶]  [W]e have nothing to add. We are no longer involved in this case." *See id.* at pp. 24-25 of 33.

However, the situation was murky, as the State Court Docket shows 5 separate unspecified filing rejections during the dates of December 16-19, 2024. *See* Ex. 18 to Not. of Removal, Dkt #1-18.

Reasonably believing that a Dismissal with Prejudice took effect as soon as it is filed notwithstanding what a court clerk does or does not do ministerially, on December 27, 2024, Williams filed in the State Court Defendant's Motion For Order Directing The Clerk To Enter An Order Recognizing The Voluntary Dismissal Of This Action With Prejudice.  See Ex. 10 to Not. of Removal, Dkt #1-10.

Plaintiff did not file an Opposition to such Motion until June 23, 2025, and the State Court did not hear such Motion until July 7, 2025, when it took the matter under submission.  *See* Ex. 11 to Not. of Removal, Dkt #1-11.

In a Minute Order dated July 8, 2025, the State Court denied Defendant's motion to enter the dismissal, ruling, among other things, that the Notice of Dismissal submitted by Plaintiff on December 2, 2025 was ineffective and/or sufficiently retracted, and that Plaintiff could have achieved the same result under a motion to set aside the dismissal based on mistake, surprise, or inadvertence made

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

1    under California Civil Procedure Code § 473.  *See* Ex. 13 to Not. of Removal, Dkt

2    #1-13.

3         The instant Defendant's Notice of Removal at issue was made on August 7,

4    2025, 29 days after the State Court's Order of July 8, 2025 confirming for the first

5    time that Plaintiff's State Court Action was formally "un-dismissed" and active as of

6    such date.

7    **C.**    **Defendant Gerard Richard Williams III And His Residency Versus**
          **Domicile**
8

9         Williams does not dispute that he is a "resident" of California – he is proudly

10   so.  He owns a house in Newport Coast, California, and has earned income from

11   work done in California.  As discussed further below, *see* Section III (B) *infra*,

12   however, "residence" is not the same as "domicile."

13        Williams was born and raised Christian County, Missouri (in southwest

14   Missouri between the state capital of Springfield and the border with Arkansas),

15   where his parents and other family members still live today.  Williams shall inherit

16   the real property in which his parents currently live in the town of Ozark, Missouri.

17   See Decl. of Gerard Richard Williams III filed concurrently herewith ("Williams

18   Decl.") ¶¶ 2-4, 10 19.

19        When he was a child in Southwestern Missouri, his family was very poor and

20   lived well below the poverty line. Yet, despite their financial struggles, life never

21   truly felt poor, and his family was spiritually rich.  The greatest gift Williams's

22   parents gave him was not material.  It was the lesson of caring and being thankful

23   for everything—whether large or small.  Based on his upbringing, values, and the

24   hometown area that define the person he is, Williams learned humility, honesty,

25   integrity, service, and the importance of helping others. *See id.* ¶¶ 2-6.

26        In about 2012, Williams's parents moved to a small town called Ozark,

27   Missouri, to create a new home so the family could live together in the same place

28   permanently.  Ozark, located in Southwest Missouri, is Williams's haven, fixed

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

home that he intends to return to permanently.  The Williams's family home there, built with love and care, resembles all the memories he carries from childhood. Many of the things inside trace back to those early years.  Williams's parents remodeled it themselves, with the same dedication they put into everything they touched.  One Christmas, Williams was able to give something back: He paid off completely their home loan in Ozark.  *See id.* ¶¶ 10-12.

Williams has have lived in many places and owned several houses along the way due to employment opportunities in Texas and California.  But none of those places ever truly felt like home.  "Home" is the place that his mom and dad built with love, the land where they live, the place to which Williams has always longed to return.  *See id.* ¶ 13.

While working at Apple, Williams married Tuyen Nguyen.  Together, they helped raise seven children. They called Grandma and Grandpa daily to share their day, keeping the family close.  As such, Williams's parents want Ozark to be the place Williams would come back to when his technology obligations to the world were fulfilled, because Williams and his wife and children will then be surrounded his sister and their other relatives, about 30 uncles, aunts, and cousins.  *See id.* ¶¶ 14-16.

Williams and his wife Tuyen have resided in Newport Coast since about 2021.  Because of Tuyen's Vietnamese heritage, Williams has built connections and forged ties with the Vietnamese-American community in Texas, the Bay Area, and Orange County, the last of which is home to the largest concentration of individuals of Vietnamese origin outside of Vietnam.  However, his wife Tuyen knows that Williams's love and deepest family roots are in Ozark, Missouri. As a devout Christian and a devoted wife, she shares and supports Williams's decision to return home with his parents and extended family ties in Ozark, Missouri.  *See id.* ¶ 17.

In addition to such family and spiritual ties, Williams' most cherished personal possessions from his life are the Ozark residence in Missouri, such as:

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

- Williams's and his wife's favorite furniture.
- Their precious wedding clothes such as Williams's ivory tuxedo, and the white dress that he created and sewed for his wife. (Williams learned to make clothing from his mother, who used to work in the textile and clothing industry).
- Williams's collection of valuable books that he saved and intends to read again when he retires.
- Williams and his wife's valuable household goods that they received as wedding gifts.
- Williams's family heirlooms and keepsakes such as many of his high school and college photos, as well as graduation and wedding photos, college diplomas, technological achievements, and awards.
- Many photos of Williams's seven children that his wife Tuyen saved for 12 years.
- Williams's precious U.S. stamp collection.

*See id.* ¶¶ 18-19.

Most importantly, Williams made a solemn promise in response to his parents' wish that he return permanently to Ozark, Missouri. Williams's plan is to transform the small town of Ozark—home to just 24,000 people—into a technologically advanced haven. Given the almost limitless potential of remote and virtual work, he will be able to operate, control, and manage that business in Ozark even if some of its workers and partners will be elsewhere, including outside of the U.S. Such technology hub based in or near Ozark is especially needed because that area is not financially prosperous relative. The average household income in Ozark, Missouri is about $59,000, versus about $153,000 in California, not even taking into account that incomes in the technology sectors in California and/or the Silicon Valley and Orange County areas well exceed $153,000 annually. *See id.* ¶¶ 20-22.

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

Williams also aspires to one day serve as an adjunct professor at the University of Missouri, where he earned his master's degree, sharing knowledge with the next generation through teaching and writing. *See id.* ¶¶ 23.

## ANALYSIS

### III. DEFENDANT'S REMOVAL WAS PROPER, AND THEREFORE THE COURT SHOULD DENY REMAND OF THIS ACTION

Huynh does not challenge that for diversity and removal purposes, he himself is not a "citizen" of California, and that the amount in controversy of at least $75,000 exists. Rather, he challenges Williams's removal on two grounds: (1) the timing of the removal; and (2) the purported application of the "forum defendant" rule to Williams.

Contrary to Huynh's incorrect arguments, neither the timing of the removal nor the forum defendant rule invalidates this removal, and therefore the Court should deny Plaintiff's Motion to Remand in its entirety.

### A. Defendant's Removal Was Timely Given The Unique Circumstances Of The State Court Action

Given the unique procedural circumstances of the State Court Action, and the fact that the State Court's final determination that Huynh's dismissal was ineffective was issued only July 8, 2025, Williams's removal of this action on August 7, 2025, within 29 days of such Order, was timely.

28 U.S.C. § 1446(b)(1), provides, "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading …, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court…." And, subsection (b) (3) thereof states, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

"It is axiomatic that a case cannot be removed before its inception." *See Carvalho v. Equifax Info. Servs.*, 629 F.3d 876, 885 (9th Cir. 2010). In other words, "a proper removal requires a complaint to have first been filed…" *See Casola v. Dexcom, Inc.*, 98 F.4th 947, 952 (9th Cir. 2024); *accord Gardner v. Bliss Sequoia Ins. & Risk Advisors, Inc.*, 434 F. Supp. 3d 862, 865-66 (D. Nev. 2020) (requiring "commencement" of state court action under state procedures for trigger of absolute one-year deadline for removing action).

Defendants are not charged with notice of removability until they have received a paper that gives them enough information to remove. *See Chan Healthcare Group, PS v. Liberty Mut. Fire Ins. Co.*, 844 F.3d 1133, 1142 (9th Cir. 2017). "Because the focus on the timeliness of removal remains on whether the case is or has become removable … a defendant is not put to the impossible choice of subjecting itself to fees and sanctions by filing a premature and baseless notice of removal or losing its right to remove the case by waiting too long." *See id.*; *accord Lion Raisins, Inc. v. Fanucchi*, 788 F. Supp. 2d 1167, 1172-73 (E.D. Cal. 2011) ("[A] majority of the courts … have held that a proposed amended complaint cannot serve as a basis for removal and does not trigger the thirty-day window for filing a notice of removal under § 1446(b); removal ripens only after the state judge grants the motion to amend."). And, as this Court has ruled, the removal period does not start running until defendant has "unequivocally clear and certain" information supporting removal. *See Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1090 (C.D. Cal. 2005);

Here, Williams was served with the State Court Complaint on November 27, 2024, and Huynh filed a (putative) notice of dismissal with prejudice on December 2, 2024, a mere 5 days after such service on Williams. If Williams had proceeded nevertheless with removing the action sometime after December 2, 2024, he would

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

have risked being found to have removed an action that no longer existed, which is equivalent to removing a state court action prematurely, conduct that is sanctionable. *See Chan Healthcare*, 844 F.3d at 1441-42. This is supported by the above caselaw teaching that inception and commencement of a state court action, as evidence by the filing or pendency of a complaint, is required before a removal can be made; as such, the dismissal of an action such as that was done by Huynh on December 2, 2024 means that such inception / commencement / pendency / filing no longer existed.

Huynh's Motion argues that December 16, 2024 was the trigger date for the 30-day deadline to remove, because that was when Williams learned that the State Court Clerk had rejected Huynh's dismissal filed on December 2, 2024. *See* Mot. at 4.[3] That is incorrect: it surely was ***not*** "unequivocally clear and certain" for removal purposes, *see Mattel*, 441 F. Supp. 2d at 1090, that, in fact, the dismissal was legally null and void despite the lack of ministerial action by the court clerk. Courts are clear that sufficient notice for potential removal is not achieved until "a paper that gives [defendants] enough information to remove…." Such information contained in a paper – a definitive determination by the State Court that the dismissal ***was*** ineffective, and that therefore the case was "alive and active," in Huynh's words – did not come until the State Court's Order on July 8, 2025.

Instructive here is the decision in *Casola*, 98 F.4th at 947, especially as that case involved electronic filing-related delay issues as well. In *Casola*, defendant Dexcom learned of a complaint being filed against it in San Diego Superior Court through a subscription service, and before the complaint had even been processed by the court and formally conformed with a filing stamp. *See id.* at 951-52. Defendant Dexcom did this pre-service and pre-filing "snap removal" as a tactical maneuver to

---

[3] It was actually December ***17***, 2024, when Huynh's prior counsel told Williams's counsel that Huynh had new counsel as of such date and was seeking to "withdraw" his previously submitted Dismissal with Prejudice.

avoid the forum defendant rule even though it was undisputedly a California citizen. Under 28 U.S.C § 1441, removal can be made if "none of the parties in interest properly joined **and served** as defendants is a citizen of the State in which such action is brought" (emphasis added), and because Dexcom had not been served, arguably it could still remove the case despite being a California citizen. *See id.* at 951-52. On appeal, the Ninth Circuit concluded that Dexcom's notice of removal was ineffective, because absent the complaint being "processed, and endorsed or otherwise acknowledged as officially filed," there had not be a "filing" of an action so as to permit removal, and/or it was questionable whether "a civil action is in fact pending in state court—**a prerequisite for removal**." *See id.* at 952-53, 955 n.7 (emphasis added).

That would have been the fate of any notice of removal filed by Williams prematurely: certainly between December 2, 2024 and December 16-17, 2024 (after Huynh filed the dismissal and before clerk's rejection of such dismissal), and at least potentially all the way up until July 8, 2025, when the State Court finally confirmed that Huynh's dismissal with prejudice was invalid. To suggest now after the fact that Williams should have removed 30 days after December 16-17, 2024 would have put Williams in the same dilemma prohibited by *Chan Healthcare*; namely, the "impossible choice of subjecting [himself] to fees and sanctions by filing a premature and baseless notice of removal or losing its right to remove the case by waiting too long." *See* 844 F.3d at 1441-42. Notably, Huynh cites no decisions, none, supporting the notion that in circumstances remotely similar to this one – a plaintiff's attempted dismissal and attempted un-dismissal of an action, followed by complicated motion practice regarding whether the dismissal was effective – a removing defendant is charged with having to predict seven or eight months ahead of time that the dismissal was in fact not effective.

Virtually point here is the decision in *Greising v. C.P. Chemical Co.*, 645 F. Supp. 553 (D. Minn. 1986), where the court considered the consequences for

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

- 12 -

removal arising from an incorrect dismissal in state court. In that decision, plaintiffs sued two defendants in Minnesota state court, one defendant from Minnesota and one defendant from New York. When plaintiffs settled with the Minnesota defendant, they filed a dismissal of that one defendant alone, but the court clerk incorrectly entered a dismissal of both defendants in a judgment dated July 9, which was received by New York defendant's counsel on July 10. After plaintiffs informed the clerk of such error, the clerk issued and served an amended judgment (dismissing only the Minnesota defendant) on July 11, which all defendants received on July 14. *See id.* at 553. When the New York defendant filed a notice of removal on August 13, plaintiffs agreed that such removal missed the 30-day deadline that had begun running on July 10.

The court disagreed and denied plaintiffs' motion to remand. It reasoned:

> [T]he first judgment of dismissal, even if incorrect, had legal effect. Since the correct judgment of dismissal dismissed the entire case, defendant could not have removed to federal court because there was nothing left to remove. Even if the defendant had known the judgment was incorrect, it could not have legally removed until the judgment of dismissal was amended and the case against defendant was reinstated. At best, the conflict between the correct dismissal and order of dismissal and the incorrect judgment of dismissal created an ambiguity as to whether in fact the case was removable. As one court has stated, '… the purpose of § 1446(b) … is to limit the time for removal except where the defendant cannot be sure that the case is removable.'

*See id.* at 555 (citations omitted). The court concluded that because the New York defendant could be sure of removability only when its counsel received on July 14 the amended dismissal, the removal on August 13 was timely. *See id.*

The same was the case here. Williams became "sure" that the State Court Action was validly reinstated only on July 8, 2025, when the State Court issued its Minute Order denying Williams's motion to enforce the dismissal. As such, under the reasoning of *Greising* as well as other authorities requiring the certainty of removability, Williams's removal on August 7, 2025 was timely.

Also meritless is Huynh's claim that Williams had "waived the right to remove this matter by invoking the jurisdiction of the Superior Court of California"

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

by filing the motion to enforce dismissal, motion for reconsideration, and a writ petition with the California Court of Appeal. *See* Mot. at 5.

For this proposition, Huynh cited *Johnson v. Heublein Inc.*, 227 F.3d 236, 244 (5th Cir. 2000), which held that by "filing both motions to dismiss and a motion for summary judgment in the state court proceeding …, thus invoking the jurisdiction of the state court in resolving the issues presented by the original complaint," defendant therein had waived the right to remove. However, aside from Fifth Circuit authority not being binding here, the motion to dismiss and motion for summary judgment in *Johnson* went to the substantive merits of the case, whereas all of the filings made by Williams in State Court addressed only jurisdiction issues – whether a live and active case continued to exist in the Orange County Superior Court after Huynh's putative dismissal with prejudice of it on December 2, 2025.

The Court should reject Huynh's arguments and find that given the circumstances and timing of the State Court Action, and application of the proper caselaw interpreting 28 U.S.C. § 1446(b), Williams timely removed this case on August 7, 2025.

### B. Defendant Williams's Domicile Is Missouri, and Therefore He Was Not Precluded From Removing The State Court Action Under The Forum Defendant Rule

Huynh's second incorrect argument is that Williams is disqualified from removing this action based on the forum defendant rule, as he is supposedly a citizen of California. As explained below, the proper consideration is not Williams's place of residency, but rather, his ***domicile***, which is the State of Missouri.

28 U.S.C. § 1441(b)(2) states, "(a) civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This provision, referred to as the "forum defendant rule," "confines removal on the basis of diversity jurisdiction to instances

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

1    where no defendant is a citizen of the forum state." *See Lively v. Wild Oats Mkts.,*

2    *Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

3         Notably, however, as the Ninth Circuit has explained:

4         [T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of
          citizenship, not of residency… ***The natural person's state citizenship***
5         ***is then determined by her state of domicile, not her state of residence.***
          A person's domicile is her permanent home, where she resides with the
6         intention to remain or to which she intends to return…  A person
          residing in a given state is not necessarily domiciled there, and thus is
7         not necessarily a citizen of that state.  *See, e.g., Weible v. United States*,
          244 F.2d 158, 163 (9th Cir.1957) ('Residence is physical, whereas
8         domicile is generally a compound of physical presence plus an
          intention to make a certain definite place one's permanent abode,
9         though, to be sure, ***domicile often hangs on the slender thread of***
          ***intent alone***, as for instance where one is a wanderer over the earth.
10        Residence is not an immutable condition of domicile.').

11   *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir . 2001) (emphasis

12   added).  *Accord Jong v. General Motors Corp.*, 359 F. Supp. 223, 225 (1973)

13   ("While the record is clear that [defendant] took temporary residence in

14   Massachusetts, the record also shows that he had no intent to become a citizen of

15   that state. Although domicile and citizenship are synonymous for diversity purposes

16   …, mere residence in a state is not enough to show domicile…  Since [defendant]

17   intended to reside elsewhere after his training, then, absent any present intention to

18   reside permanently or indefinitely in Massachusetts, he did not become domiciled in

19   that state.") (citations omitted); *Garza v. Brinderson Constructors, Inc.*, 178 F.

20   Supp. 3d 906, 913 (N.D. Cal. 2016) ("A person is domiciled in a location where he

21   or she has established a fixed habitation or abode in a particular place, and intends to

22   remain there permanently or indefinitely; a person residing in a given state is not

23   necessarily domiciled there, and thus is not necessarily a citizen of that state.…")

24   (citations omitted); *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 875 (C.D. Cal.

25   2021) ("state citizenship is determined by state of domicile, not state of residence");

26   *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885-86 (9th Cir. 2013)

27   (rejecting presumption that party's current residence is "prima facie evidence of the

28   person's domicile").

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

A person's domicile can be determined by a number of factors, none of which is controlling, including residence, location of personal and real property, and location of spouse and family, *see Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986), in addition to, crucially, such person's intent, regardless of whether it is a "slender thread of intent alone," *see Weible*, 244 F.2d at 163. *See also* 26 CFR § 25.2501-1(b)(for taxation purposes, "Residence without the requisite intention to remain indefinitely will not constitute domicile…").

Here, regardless of Williams's current residency in California (and previous residency in Texas), his "domicile" for purposes and diversity and removal is in Ozark, Christian County, in Southwest Missouri, for the following reasons:

- Williams's parents and his only sister, and over 30 aunts, uncles, and cousin today still live in the area surrounding Ozark, Christian County, Missouri.
- He, his wife, and children are very close to his parents, talking to them daily.
- Williams shall inherit the real property in Missouri in which his parents currently live.
- Williams's most cherished possessions from his life are located at the home in Ozark, Missouri: his favorite furniture, clothing, valuable books, family heirlooms and keepsakes such as many of his high school and college photos, as well as graduation and wedding photos, college diplomas, awards, and his U.S. stamp collection. They also include his wife's wedding dress, which Williams personally oversaw the sewing of.
- Williams has lived in a number of different states during his professional career, including for about 15 years in Texas, and about 11 years in the Bay Area of California before moving to Orange County in 2021.
- However, Williams has made a solemn promise to his parents to return and resettle in Ozark, Missouri, once his work is done here in California.

- 16 -

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

- Williams, a technology entrepreneur and innovator who, *e.g.*, with over 60 technology patents and a background in computer architecture helped develop technology used in the Apple iPhone and MAC, is planning to establish a technology business with its base in Missouri.  Given the almost limitless potential of remote and virtual work, Williams will be able to operate, control, and manage that business in Missouri even if some of its workers and partners will be elsewhere, including outside of the U.S.

- Such a business based in or near Ozark, Christian County, Missouri is especially needed because that area is not financially prosperous.

- Growing up personally poor in Southwest Missouri, where his father was a pastor, Williams has made a vow to his family that if he were able to do so, he would eventually return to the area to help create new economic opportunities there, which hopefully be in a position to do for his next business venture in technology.

*See generally* Williams Decl.

Huynh's Motion cites a number of declarations and court documents wherein Williams stated to the effect that he owns the property in Newport Coast where Huynh hurt himself at issue in this dispute; he and his current wife live in Orange County (as well as Williams being a former resident of Texas); he has worked for Qualcomm in San Diego since 2021, and before that, worked for tech companies in the Bay Area; Williams has forged ties with the Vietnamese-American community in Orange County; and he has signed declarations in California.  *See* Mot. at 6-10.

Williams and his family have indeed been blessed to reside in Newport Coast, a beautiful area, since about 2021. Because of his wife's Vietnamese heritage, Williams is also proud to have built connections and forged ties with the Vietnamese-American communities in Texas and Orange County, the latter of which is home to the largest concentration of individuals of Vietnamese origin

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

1  outside of Vietnam.  However, his wife knows that Williams's love and deepest

2  family roots are in Ozark, Missouri. As a Christian and a devoted wife, she shares

3  and supports his decision to return home with his parents and extended family ties in

4  Ozark, Missouri.  *See* Williams Decl. ¶ 17.

5      As Huynh's Motion acknowledges without perhaps realizing the implications

6  of it, Williams has moved around extensively, including living and working in the

7  Bay Area, and in Texas for approximately 15 years, and that therefore his current

8  residency in Orange County is effectively temporary as well.  As indicated above,

9  Williams intends to eventually return to Missouri to establish a technology venture

10  there, to fulfill his promise to his parents as well as his own resolve to help the less

11  prosperous community from which he came.

12      Huynh cites two documents in which it was alleged on Williams's behalf that

13  he is a California "citizen," in a separate action filed in Orange County Superior

14  Court against Huynh on December 2, 2024, entitled *Williams III v. Huynh*, Case No.

15  30-2024-01443938-CU-PO-CJC, and the First Amended Complaint in that same

16  case.  *See* Mot. at 6-7 (citing Exs. A-B to Decl. of Brandon Tran in support of Mot.

17  to Remand).[4]

18      Crucially, however, such allegations regarding California "citizenship" were

19  made without a close review by Williams.  When he reviewed draft versions of

20  those documents prior to the filing, he had focused on the substance of those

21  pleadings involving his claims against Huynh, each of which was 34 pages long.  In

22  both pleadings, which were unverified, Williams did not notice the single sentence

23  in paragraph 2 in each pleading referring to his alleged citizenship.  *See* Williams

24  Decl. ¶¶ 9.

25

26  _____

27  [4] Williams has since dismissed this separate action without prejudice due to what he
   thought was Huynh's Dismissal with Prejudice of the State Court Action, as
28  discussed above.  *See also* Williams Decl. ¶ 9 n.1.

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

- 18 -

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

Moreover, as set forth above, "citizenship" is a term of art – as well as a conclusion of law – for purposes of federal diversity and removal, and Williams, acting through his attorney, did not consider at the time whether it was necessary to spell out and address the differences between residency and domicile, only the latter of which established "citizenship."  Accordingly, such isolated and unnoticed references in two unverified pleadings, especially given the legal nature of the term, do not undermine Williams's detailed explanations herein why his "domicile," and therefore his "citizenship" for the purposes of removal, is Missouri, therefore entitling him to federal removal notwithstanding the forum defendant rule.[5]

Williams's removal of this action on August 7, 2025 was timely under the circumstances; and, based on the controlling authority, he does not constitute a forum defendant disqualified from removal.  The Court should, therefore, deny Huynh's Motion to Remand and keep this case.

## IV.    EVEN IF THE COURT DECIDES TO REMAND THIS ACTION, NO ATTORNEYS' FEES SHOULD BE AWARDED TO PLAINTIFF

Finally, even if the Court determines that Huynh has met the grounds for remand on the grounds he asserts, which the Court should not, it should nevertheless deny the almost $15,000 demanded by Huynh as attorneys fees.  *See* Mot. at 12-13.

28 U.S.C. § 1447(c) provides, "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  As the term "may" indicates, such award is up to the discretion of the court.  *See Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008); *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 447 (9th Cir. 1992) ("Given the wide discretion provided the district court by section 1447(c), we

---

[5] Huynh also cites the address of record in Orange County for a business of Williams's wife Tiffany, see Mot. at 8, which is obviously not relevant to a determination of this matter wherein only Gerard Williams III is defendant.

- 19 -

1  will review an award of attorney's fees under this statute for an abuse of

2  discretion.").

3      Whether a district court should exercise its discretion to award fees for a

4  successful motion is whether defendant had an "objectively reasonable basis" for the

5  removal of action, versus whether it was "frivolous."  Thus, where the removal

6  involved circumstances and legal issues that had previously not been "fleshed out"

7  or were of uncertain "clarity," and that under the applicable law, the removal was

8  "not clearly foreclosed," such removal was considered to be objectively reasonable.

9  *See id.* at 1066-67; *accord Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)

10 ("As a general rule, if, at the time the defendant filed his notice in federal court,

11 clearly established law demonstrated that he had no basis for removal, then a district

12 court should award a plaintiff his attorneys' fees.  By contrast, if clearly established

13 law did not foreclose a defendant's basis for removal, then a district court should not

14 award attorneys' fees.").  *See also Solorzano v. American Nat'l Ins. Co.*, 609 F.

15 Supp. 144, 146 (C.D. Cal. 1985) (denying fees after remand because legitimate

16 question as to time to remove was raised by uncertainty of case law); *Lemos v.*

17 *Fencl*, 828 F.2d 616, 619 (9th Cir. 1987) (whether bifurcation of nondiverse

18 defendants for trial rendered removal proper was "close call"; hence sanctions for

19 removal petition not warranted).

20     Here, it was at least objectively reasonable and certainly "not foreclosed" for

21 Williams to remove this action.  As discussed in detail above, the peculiar

22 circumstances of Huynh's attempt to dismiss the State Court Action, and then un-

23 dismiss it, and then the motion practice regarding it in the State Court for 7-8

24 months that did not get resolved until July 8, 2025 created at least a legitimate

25 question as to whether the timing of Williams's removal on August 7, 2025 was

26 timely.

27     Further, Williams had at least a good faith basis to remove notwithstanding

28 the forum defendant rule.  Huynh's demand for fees largely assumes that Williams's

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

OPPOSITION TO MOTION FOR REMAND

1  *residency* in California was enough to disqualify him from removing. But because

2  *domicile* is the controlling question, and Huynh does little or nothing to address

3  Williams's domicile, even if the Court determines the forum defendant rule in favor

4  of remand, the circumstances show that it is at least a "close call" and/or a

5  "legitimate question," which warrants a rejection of Huynh's fees demand.

6      Finally, aside from the fact that Huynh's calculation of fees is not backed

7  with any billing statements, as well as the likelihood that Huynh has a contingency

8  fee arrangement with his attorneys that makes the claimed hourly fees inappropriate,

9  the amount of attorney time claimed by Huynh is unreasonable and excessive.

10  Huynh's attorneys claim 24 billable hours to file the opening papers, including a

11  brief that was only 13 pages long. They also claim that they will spend another 9

12  hours' worth of attorney time to prepare a reply and for the hearing of this matter.

13  All of the foregoing is excessive, and if not rejected and disallowed completely,

14  should be reduced by at least 70-75 percent.

15      The Court should deny Huynh's demand for attorneys fees in its entirety.

16  **V.    CONCLUSION**

17      For the reasons stated above, the Court should deny Plaintiff's Motion to

18  Remand in its entirety, and keep this case in federal court for the remainder of the

19  litigation. However, even if the Court determines that this case must be remanded,

20  which the Court should not, it should decline to award attorneys' fees in favor of

21  Plaintiff Hung Huynh and against Defendant Gerard Richard Williams, which fees

22  demanded by Plaintiff are excessive in any case.

23

24  Dated: September 16, 2025          **CALLAHAN & BLAINE, PC**

25                                     By:  ___/s/ *Raphael Cung*___

26                                          Edward Susolik
                                            Raphael Cung
27                                          Attorneys for Defendant GERARD
                                            RICHARD WILLIAMS III

28

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

Dated:  September 16, 2025

**LAW OFFICES OF PAUL N. PHILIPS, APLC**

By: _____/s/ *Paul N. Philips*_____
Paul N. Philips
Attorneys for Defendant GERARD
RICHARD WILLIAMS III

\

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

# **CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 11-6 of the U.S. District Court for the Central District of California, I certify that DEFENDANT GERARD RICHARD WILLIAMS III'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND complies with the applicable word limit.

According to the word count function of Microsoft Word, this document contains 6,755 words, excluding the portions exempted by Local Rule 11-6.1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. and that I executed this Certificate on the date below in Santa Ana, California.

Dated:  September 16, 2025            **CALLAHAN & BLAINE, PC**

By:  ___/s/ *Raphael Cung*_____
                Edward Susolik
                Raphael Cung
        Attorneys for Defendant GERARD
        RICHARD WILLIAMS III

CALLAHAN & BLAINE, PC
ATTORNEYS AT LAW
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445